# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| AUTOTECH TECHNOLOGIES LIMITED PARTNERSHIP,<br><br>Plaintiff,<br><br>vs.<br><br>AUTOMATIONDIRECT.COM, INC., TIMOTHY HOHMANN and KOYO ELECTRONICS INDUSTRIES CO., LTD.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 05 C 5488<br><br>Judge James F. Holderman<br><br>Magistrate Judge Jeffrey Cole |
| AUTOMATIONDIRECT.COM, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>AUTOTECH TECHNOLOGIES L.P., AVG ADVANCED TECHNOLOGIES, INC., SHALLI INDUSTRIES, INC., and SHALABH KUMAR,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |

## MEMORANDUM OPINION AND ORDER

### I.
### INTRODUCTION

Judge Rubin has wryly observed that "brevity may be wit's soul, but it is no part of patent litigation." *Laitram Corp. v. Deepsouth Packing Co.,* 301 F.Supp. 1037 (S.D. La. 1969). The same may be said of intellectual property cases generally. Thus, ADC's 3 ½ page motion seeking a protective

order precluding discovery of its customer list should have been greeted with enthusiasm. After all, some issues are so clear that extended discussion is unnecessary – discovery of customer lists it turns out is not always one of them – and the ability to encapsulate the most complicated ideas in a few words is what lawyers are told to strive for. *Cf.* Ruggero J. Aldersert, Winning on Appeal (1992).[1] But for reasons that will become apparent, the motion produced a decidedly different reaction. What was troubling was not the succinctness of the motion – if ADC chose to run dangerously close to the rule that skeletal presentations are waived, that was its choice. [2] What was troubling was the withholding until the reply brief of any attempt at development of the argument and the withholding of citation of supporting authorities. "A reply brief is for replying" not for raising essentially new matter that could have been advanced in the opening brief. *Hussein v. Oshkosh Motor Truck Company*, 816 F.2d 348, 360 (7th Cir. 1987) (Posner, J., concurring).

ADC's reply brief was eleven pages, and, unlike the opening brief which cited one, marginally relevant case,[3] it cited fifteen cases, two treatises on trademarks and unfair competition, and appended a declaration of ADC's director of business development. All of this could and should have been part of

---

[1] Indeed that ability was a hallmark of the greatest judge in American history. *See* Cardozo, Mr. Justice Holmes, in Mr. Justice Holmes, 2, 15 (Coward-McCann, Inc. 1931)(" If anyone has ever been skeptical of the transfiguring power of style let him look to [his] opinions. They will put skepticism to flight. How compact they are, a sentence where most of us would use a paragraph, a paragraph for a page!").

[2] *See United States v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *United States v. Cusimano*, 148 F.3d 824, 828 n.2 (7th Cir. 1998). The 3 ½ page opening brief even failed to mention what the substantive claim is.

[3] *Zenith Electronics Corp. v. Exzec, Inc.*, 1998 WL 9181 (N.D.Ill. 1998) was a patent case in which the district court affirmed the magistrate judge, who had held that absent a showing of particularized need, materials accompanying a patent application were confidential and were not producible to a competitor.

2

ADC's initial presentation.[4] The courts have characterized this tactic in a variety of ways – all negative. Blind-siding, gamesmanship, and sandbagging are the most commonly used epithets. Regardless of the name applied, the gambit has no place in the judicial system. *Cf., United States v. Portis*, 542 F.2d 414, 418 (7th Cir. 1976)(condemning "gamesmanship in getting the last word"); *Pike v. Caldera*, 188 F.R.D. 519, 537 (S.D. Ind. 1999). Loading-up on a reply brief effectively results in a one-sided presentation, which is hopelessly inconsistent with the very premise on which the adversary system is based. In addition to being unfair to one's opponent, the tactic of saving everything for last adversely affects the accuracy of the judicial process, which depends on comprehensive presentations by both sides. *Cf., Adamson v. California*, 332 U.S. 46, 59 (1946) (Frankfurter, J., concurring). *Compare United States v. James Daniel Good Real Property*, 510 U.S. 43, 55 (1993); *Burdett v. Miller*, 957 F.2d 1375, 1380 (7th Cir. 1992).[5]

To insure that the aggrieved party is not impermissibly affected, a court must either invoke the waiver doctrine or allow the filing of a surreply. *Beard v. Seagate Technology*, 145 F.3d 1159 (10th Cir. 1998); *Commonwealth Edison v. U.S. Nuclear Regulatory Commission*, 830 F.2d 610, 621 (7th Cir. 1987); *Fenster v. Tepfer & Spitz, Ltd.*, 301 F.3d 851, 859 (7th Cir. 2002). Neither course is particularly attractive: the former punishes (permissibly) the client for his lawyer's misconduct, while the latter results

---

[4] This number of cases cited affirmatively does not include the proper responses to the three cases cited in Autotech's response brief.

[5] Brandeis said it best: "A judge rarely performs his functions adequately unless the case before him is adequately presented." *The Living Law*, 10 Ill.L.Rev. 461, 470 (1916). Adequate presentation obviously demands that each side has an adequate opportunity to be heard.

in an additional and needless expenditure of judicial resources.[6] The shortness of life imposes constraints on the amount of time that a judge has to devote to any given problem. Surreplies necessitated by inappropriate reply briefs take time away from other litigants who are waiting in the endless queue of cases. *Cf. Szabo Food Service, Inc. v. Canteen Corp.,* 823 F.2d 1073, 1077 (7th Cir. 1987). ADC's gambit has made the decision of this motion more difficult than it should have been and resulted in the filing of an additional brief by Autotech that should not have been necessary.[7]

## II.
## BACKGROUND

ADC and Autotech are involved in the computer touch-screen panel industry. Autotech is an Illinois limited partnership that designs, manufactures and sells touch panels, industrial PCs, and other industrial control products throughout the United States and internationally under the trade name AVG Group and AVG Automation. (Autotech's *Second Amended Complaint,* ¶¶ 1, 7). ADC is a direct marketer that sells products throughout the United States via catalogues and the Internet, with its organization and principal place of business in Georgia. (*Id.* ¶ 2). On September 8, 1999, they entered into a contract – which they called the "covenant vendor agreement" – whereby ADC would market touch screen panels and other products that Autotech designed and manufactured specifically for ADC. (Id. ¶

---

[6] Autotech included in a separate memorandum in opposition to an ADC motion to compel, what was in effect, though not in name, a surreply. (*See* Autotech's Memorandum in Opposition to Motion to Compel and in Support of Autotech's Motion to Further Address Defendant's Motion for Protective Order and For Other Relief.

[7] At an earlier stage of the case when it was in Georgia, ADC was criticized by Judge Cooper who concluded that ADC "exhibited inequitable conduct and a race to the courthouse in connection with the filing of this action, which warrant a departure from the first-to-file rule." (Order at 20). Later in the Order transferring venue, he branded ADC's argument that the case could be resolved without regarding to the rights and obligations of the parties under their agreements as "disingenuous." (Order at 20).

4

9). Under the agreement, Autotech granted ADC exclusive rights for all products in their worldwide sales territory, while ADC agreed that it would not sell rival products, excepting some that were being phased out. ADC also agreed to use its best efforts to distribute Autotech's products and that, upon Autotech's request, ADC would account monthly to Autotech on "customer information." (*Id.*). The "EZTouch" touch screen panel was chief among these products.

The agreement was set to expire on December 31, 2004, but would automatically renew for one-year periods unless one party gave the other written notice of its intent to cancel the contract at least six months prior to the expiration. ADC provided such notice in June of 2004. But, on November 12, 2004, the parties entered into a second agreement ("the second agreement"), which provided that ADC would market and distribute Autotech's products – specifically those distributed under the names EZTouch and EZText. The ownership of those trademarks is in dispute. Unlike the first agreement, the second agreement was non-exclusive, but provided that Autotech would sell products with the EZTouch brand name only through ADC for the year 2005. Furthermore, the parties acknowledged in that agreement their ongoing dispute as to ownership of the EZTouch trademark and indicated that the agreement would have no effect on that issue.

ADC alleges that, beginning in January 2005, Autotech began using variations of the EZTouch/EZText names and ADC's copyrighted materials to promote its products and also made harmful false representations in its advertisements. (*Autotech's Response to ADC's Motion for Protective Order*, at 4)("Autotech Response"). These actions, according to ADC, were contrary to Autotech's commitment with respect to the EZTouch name and violated what ADC feels is its superior interest in the names and copyrights. (*Id.*). After failing to resolve the dispute, ADC brought suit in the United States

5

District Court for the Northern District of Georgia against Autotech, AVG Advanced Technologies, Inc. ("AVG"), Shalli Industries, Inc. ("Shalli"), and Shalabh Jumar (collectively, "Autotech parties") on April 11, 2005, alleging false advertising, copyright infringement, trademark infringement, unfair competition, and deceptive trade practices. (*Autotech Response*, Ex. E, at 1, 6). The defendants moved for transfer of venue or, in the alternative, to dismiss. (Exh. E, at 2). The United States District Court for the Northern District of Georgia granted Defendant's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a), and the case left Georgia for Illinois on January 12, 2006 . (*Autotech Response*, Exh. E, at 24).

Autotech was not without its own grievances. On September 15, 2005, it brought suit against ADC in the Circuit Court of Cook County, Illinois, alleging that ADC breached its contractual and fiduciary duties to Autotech when it developed touch screen products in competition with Autotech. Autotech complained that ADC did not fulfill its obligations under their agreements and, in fact, embarked on an effort to "defeat the promotion of Autotech products," refused to provide customer leads or names of customers, and developed a "C-More" touch screen to compete with Autotech's products during the period of their contract. The action was removed to this court, and Autotech amended its complaint on December 21, 2005.

On September 29, 2005, Autotech moved for a preliminary injunction and sought, among its requests for relief, the names of "all customers and contacted prospects who have been solicited or sold any of the products purchased by ADC from Autotech." (*Motion for Preliminary Injunctive Relief*, at 8). This motion was denied on November 23, 2005. Autotech again sought the names of ADC's customers when it served interrogatories and production requests upon ADC on December 16, 2005. (*ADC's Motion for Protective Order*, at 2). As part of these requests, Autotech demanded ADC's

customer lists from 2000 to the present for information relating to purchasers or potential purchasers of any and all products in the EZTouch EZText product lines, and all customer lists and documents regarding or pertaining to any and all warranty returns of any and all products in the EZ Touch and EZText product lines. ADC objected to the request, and filed the instant Motion for Protective Order, pursuant to Rule 26(c).

ADC argues that its customer list information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence and that such lists are not discoverable–especially where, as here, Autotech–according to ADC-- is seeking the information, not for purposes of legitimate discovery in this litigation, but for strictly competitive purposes. It also argues that the customer list information is proprietary and confidential and merits protection from discovery under Rule 26(c)(7). ADC also points out that Judge Holderman already closed the door on Autotech's request for disclosure of ADC's customer lists when he denied Autotech's Motion for Preliminary Injunction in November, 2005.[8]

In its response to ADC's motion, Autotech argues that it is entitled to the customer list information because its allegations that ADC breached its contractual obligations by allegedly attempting to divert the customer base, and because Autotech was entitled to customer information under the parties' "covenant vendor agreement." Autotech also broadly asserts that the customer information is relevant by virtue of the fact that Judge Cooper saw fit to transfer the case to Illinois because, *inter alia*, "the parties should be able to secure witnesses to testify to customer confusion. . .with relative ease." (Order at 18). Autotech's more substantive argument is that the customer list information is relevant to its defense against ADC's trademark infringement claim, in which it will be necessary to address the factual issue of potential customer

---

[8] Part of the requested relief was disclosure of customer information.

7

confusion. Autotech contends that it cannot possibly address this issue without having *complete and unconditional* discovery of the customer information.

<h1 style="text-align:center">III.<br>ANALYSIS</h1>

<h2 style="text-align:center">A.<br>The Standard For Obtaining A Protective Order</h2>

The Federal Rules of Civil Procedure provide for liberal discovery. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party." As expansive as the definition of relevancy is under Rule 401 of the Federal Rules of Evidence, *United States v. Murzyn*, 631 F.2d 525, 529 (7th Cir. 1980); *United States v. Marks*, 816 F.2d 1207, 1211 (7th Cir. 1987), the standard under the discovery provisions of the Federal Rules of Civil Procedure is even broader. *Hofer v. Mack Trucks*, 981 F.2d 377 (8th Cir. 1992). Nonetheless, under Rule 26(c), the court may enter an order "for good cause shown . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." The order may provide "that the disclosure or discovery not be had," or "that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way . . . ." Rule 26(c)(1), (7).

The burden to show good cause is on the party seeking the order. *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994). Conclusory statements are not sufficient. *See Zenith Electronics Corp. v. Exzec, Inc.*, 1998 WL 9181 at *8; 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035, p. 265 (1970). ADC's 3 ½ page motion is not compliant with these requirements. It merely posits that its customer list information must be protected from discovery because it is irrelevant,

8

and because it is highly confidential and proprietary," its release "would result in serious consequences on ADC's operations" and "would place ADC at a great commercial disadvantage." (*ADC's Motion for Protective Order*, at 3). Beyond the inaccuracy of the *a priori* assumption that customer lists are *necessarily* confidential and propriety and immune from discovery, these sorts of conclusory statements fail to make the particular and specific demonstration of fact that is required for the issuance of a protective order.

## B.
## ADC Has Failed To Demonstrate That
## Its Customer List Information Is Irrelevant

The initial inquiry in enforcement of any discovery request is one of relevance. *Herbert v. Lando*, 441 U.S. 153, 179 (1979)(Powell, J., concurring). Here is the sum total of ADC's argument as to why its customer list information is not relevant as set forth in its opening brief:

> The Customer List Information is outside the broad scope of permissible discovery. The Customer List Information is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence in this matter. [Autotech] knows this and is simply trying to abuse the discovery process and obtain ADC's proprietary and confidential information.

(Motion for Protective Order at 3). In the context of a motion for protective order, as in all others,[9] the *ipse dixit* of counsel will not suffice. *See In re Terra Intern., Inc.*, 134 F.3d 302, 306 (5th Cir. 1998)(court may not grant protective order in the absence of affidavits or other evidence that might provide support for party's conclusory assertion); *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 484 (3rd Cir.

---

[9] *See e.g. United States ex rel. Feingold v. AdminaStar Federal, Inc.*, 324 F.3d 492, 494 (7th Cir. 2003); *IFC Credit Corp v. Aliano Brothers General Contractors, Inc.*,437 F.3d 606, 610-611 (7th Cir. 2006); *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 351, 361 (N.D.Ill. 2005)(collecting cases). *Compare*, *In re Payne*, 431 F.3d 1055, 1066 (7th Cir.2005)(unsupported statements in oral argument will not be considered).

9

1995)("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning do not support a good cause showing."); *Surface Shields, Inc. v. Poly-Tak Protection Systems, Inc.*, No. 02 C 7228, 2003 WL 21800424, *1 (N.D.Ill. July 30, 2003)("bald statement" that customer lists secret and constitute trade secrets not enough). There must be a particularized and specific demonstration of fact. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); 8 C.Wright & A. Miller,§ 2035, at. 265. The argument advanced by the defendant is exactly the type of stereotypical and conclusory statement that is insufficient to support the entry of a protective order.

In its complaint against the Autotech parties, ADC has alleged copyright infringement, trademark infringement, unfair competition, false advertising, and deceptive trade practices. The keystone of trademark infringement – and unfair competition, as applied in this case – is "likelihood of confusion" as to origin, affiliation, connection or sponsorship of goods or services among the relevant class of customers and potential customers. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004); *Sullivan v. CBS Corp.*, 385 F.3d 772, 775-76 (7th Cir. 2004); *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 436 (7th Cir. 1999). Thus, various allegations in ADC's complaint make specific reference to customers and their association of the disputed trademarks with ADC rather than Autotech. (¶¶23, 28, 31-32, 50).

In assessing the likelihood of confusion, factors to which courts look are: (1) the similarity of the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiff. *Sullivan*, 385 F.3d at 776; *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002). While actual

confusion need not be shown in order to prevail, it is compelling proof of likelihood of confusion, 3 McCarthy on Trademarks and Unfair Competition, §2314 (4th ed.), and its absence can be evidence that such likelihood does not exist. *Nike Corp. v "Just Did It" Enterprises*, 6 F.3d 1225, 1231 (7th Cir. 1993); *Libman Co. v. Vining Industries, Inc.*, 69 F.3D 1360 (7th Cir. 1995)(Posner, J.); *Exxon Corp. V. Xoil Energy Resources, Inc.*, 552 F.Supp. 1008, 1020 (S.D.N.Y. 1981).

One method of demonstrating the existence – or non-existence – of actual confusion is through customer surveys. *Sullivan*, 385 F.3d at 779; *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 826 (7th Cir. 2002); *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 465 (7th Cir. 2000); *Rust Environment & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1218 (7th Cir. 1997); 3 McCarthy on Trademarks and Unfair Competition § 23:17 (4th ed.).[10] It is not uncommon in such cases for each side to conduct its own survey. *Sullivan*, 385 F.3d at 779; *Reed-Union Corp. v. Turtle Wax, Inc.*, 77 F.3d 909, 912 (7th Cir. 1996). So here, for example, both ADC and Autotech might conduct such surveys to gain evidence on the likelihood of confusion issue.

Of course, such surveys must target the relevant customer (or potential customer) group. *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 645 (7th Cir. 2001); *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 637 (7th Cir. 1999). The requirement that surveys be directed to the relevant group makes lists of actual or potential customers relevant. *See Asch/Grossbardt Inc. v.*

---

[10] Customer surveys are not the only way to assemble evidence regarding actual confusion. *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1046 (7th Cir. 2000)(hypothetical question asking would-be consumers to compare; testimony from an expert in marketing or psychology); *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, *639 (7th Cir. 2003)(two instances of actual confusion); *CAE, Inc. v. Clean Air Engineering, Inc.*, 267 F.3d 660, 686 (7th Cir. 2001)(one instance of actual confusion); *Barbasol Co. V. Jacobs*, 160,F.2d 336 (7th Cir. 1947)(expert testimony).

*Asher Jewelry Co., Inc.*, 2003 WL 660833 at, \*2 *(S.D.N.Y. 2003)*(customer list relevant on the issues of actual confusion and likelihood of confusion); *Liberty Folder v. Curtiss Anthony Corp.*, 90 F.R.D. 80, 82 (S.D.Ohio 1981)(customer lists "relevant" at least in the broad sense in which that term is used in Rule 26(b)(1)). Since ADC fails even to note in its opening brief that it has filed a trademark infringement case, it is not surprising that it has ignored the entire body of case law pertaining to this issue.

In its reply brief, ADC finally adverts to the nature of its claim and attempts to develop its contention that its customer lists are not relevant to the issue of the likelihood of confusion and actual confusion. But an argument that is neither developed nor supported until the filing of a reply brief does not warrant consideration. The argument is usually deemed waived. *See Harper v. Vigilant Insurance. Co.*, 433 F.3d 521, 528 (7th Cir. 2005)("The argument is more developed in . . . reply brief, but this is too little, too late. . . ."); *Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir. 2004); *Wright v. United States*, 139 F.3d 551 (7th Cir. 1998)(waiver argument waived); *Help At Home, Inc. v. Medical Capital, LLC*, 260 F.3d 748, 753 n. 2 (7th Cir. 2001). *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 586 (7th Cir. 1999).

The reply brief is no more supportive of ADC's claim of irrelevancy than its opening brief. Indeed, it tends to undercut the argument. There are two rather significant difficulties with ADC'S reliance on *Asch/Grossbardt Inc. v. Asher Jewelry*. 2002 WL 31867716 (S.D.N.Y. 2002), the only case cited to support the proposition that customer lists are not relevant to a trademark claim. First, the magistrate judge denied the plaintiff's request that the defendant produce its entire customer list, not because it was not relevant, but because he thought there were alternative methods of showing confusion, and he was

convinced that the request was a "transparent ploy" to obtain a competitive advantage.[11] Second, and more importantly, the decision was reversed by the district court on review, and the customer lists were required to be disclosed under a protective order. *Asch/Grossbardt,*, 2003 WL 660833, *3. The district court made clear that in most cases the question is not whether the lists will be produced, but under what circumstances. *Id.* at * 2. The Seventh Circuit has been especially critical of citation to overruled cases. *See United States v. Santiago*, 826 F.2d 499, 502 n.1 (7th Cir. 1987)("Reliance on an overruled case manifests either incompetence, carelessness or an attempt to mislead the court, any one of which falls far short of acceptable professional conduct."). Whatever else may be said of the reply brief, it does little to advance the skeletal relevancy argument in the opening brief.

The reply brief cites several other cases purportedly in support of the assertion that "discoverability of customer lists is not warranted by the likelihood of confusion standard." (Reply Brief at 5-6). None, however, so much as touches on the relevancy of customer lists to the issues of likelihood of confusion and actual confusion. Two are not even trademark infringement cases. *United States v. American Optical Co.*, 39 F.R.D. 580, 581 (N.D.Cal. 1966)(civil antitrust action); *Sunkist Growers, Inc. v. Benjamin Ansehl Company*, 229 U.S.P.Q. 147, 149 (TTAB 1985)(trademark application and opposition). A third, *Gildon v. Rainin Instrument, LLC*, No. 04-852, 2005 WL 1899472, *3 (W.D.Wis. Aug. 9, 2005), while a trademark infringement case, was a post-judgment proceeding where the court denied the plaintiff's request for additional relief in the form of defendant's customer list because the plaintiff had not pursued such a remedy. Finally, while *Volkswagenwerk Aktiengesellschaft v. Westburg*, 260 F.Supp. 636

---

[11] Invoices were produced for attorneys' eyes only that reflected the identities of six foreign and four American customers.

(E.D.Pa. 1966) and *Foxworthy v. Sun Art Designs Inc.*, 42 U.S.P.Q.2d 1317 (S.D.Fla. 1997) did deal with the discoverability of customer lists, they did not address relevancy but confidentiality.

In the closing pages of its reply brief, ADC at last capitulates and admits that courts do allow discovery of customer lists, but only on a restricted basis. (Reply Brief at 6). But this is to concede that lists are relevant.

## C.
### Customer List Information Can Warrant Protection Under Rule 26(c)(7)

ADC also argues that discovery of its customer list should be precluded under Rule 26(c)(7) or that restrictions be placed on disclosure if disclosure is required. The Rule allows for protective orders prohibiting discovery of "a trade secret or other confidential research, development, or commercial information" or requiring that discovery proceed in a designated way. ADC's opening brief does not claim that its list is a trade secret. There is the unadorned conclusion that it is "highly confidential and proprietary," the type of confidential and proprietary information that is entitled to protection against disclosure, and that disclosure to Autotech "would result in serious adverse consequences" because Autotech is a direct competitor. These sorts of generalities do not satisfy the requirement that a party cannot obtain a protective order on the basis of "stereotyped and conclusory statements." *Gulf Oil*, 452 U.S. at 102 n.16; *In re Terra Intern., Inc.*, 134 F.3d at 306; *Glenmede Trust*, 56 F.3d at 484; *Gaul v. Zep Mfg. Co.*, No. 03-2439, 2003 WL 22352567, *3 (E.D.Pa. Sept. 16, 2003)(rejecting unsupported contention that documents were "commercially sensitive and could have a negative effect on the competitive position of

Defendant"); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035, p. 265 (1970).[12]

The only case cited in the opening brief, *Zenith Electronics Corp. v. Exzec, Inc.*, No. 93 C 5041, 1998 WL 9181 (N.D.Ill. Jan. 5, 1998) (*Motion for Protective Order* at 3), was a patent case that did not mention customer lists; it dealt with materials accompanying a patent application. The court noted that it was well-established that patent application materials were confidential and therefore are entitled to a heightened degree of protection against disclosure, citing cases that said as much. *See Avery Dennison Corporation v. UCB SA and UCB Films PLC*, 1996 WL 633986, at *1 (N.D.Ill.1996); *Fischer Imaging Corp. v. Lorad Corp.*, 148 F.R.D. 273, 274 (D.Colo.1993). *Zenith* detailed the balancing test to be applied when patent application materials were at issue and determined that such information would not be ordered absent a "specific showing of direct relevance or particularized need." 1998 WL 9181, *4. Then, based on the parties' submissions, the court concluded that materials at issue *were*, indeed, relevant and discoverable. *Id.* at *5-6.

In the end, there is nothing in ADC's opening brief that supports its position that its customer list information warrants protection as a trade secret or confidential material. The kind of perfunctory and undeveloped argument that is the opening brief, unsupported by pertinent authority, hardly merits consideration. *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1008 (7th Cir. 2002)(finding waiver); *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)(same).

---

[12] While customer information to a competitor would seem intuitively to be confidential and thus not discoverable, cases are not to be decided on the basis of intuition. *Cf.*, *New Sensor Corp v. CE Distributing Co.*, 121 Fed. Appx. 404 (2d Cir. 2004). For example, where customers are common knowledge within an industry, a customer list does not enjoy trade secret protection. *ATC Distribution Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc.*, 402 F.3d 700 (6th Cir. 2005). That, however, does not seem to be the situation here–or at least Autotech does not argue that it is.

It is not until its reply brief that ADC attempts to prove that its customer list is confidential. The Declaration of Gary Marchuk, ADC's director of business development, details the steps ADC takes to protect this information, including: computer pass-word protection, employee confidentiality agreements, and monitoring employee computer use. (Reply Brief at 10; Ex. 1). Where an argument is left undeveloped until a reply brief, that argument may be deemed waived. *Harper*, 433 F.3d at 528; *Coker*, 165 F.3d at 586.

Even then, in its reply brief, ADC makes no mention of what law might be applicable to this issue. It is unclear whether ADC is claiming the customer list is "a trade secret, or . . . confidential research, development or commercial information." The two cases it cites – *Volkswagenwerk Aktiengesellschaft v. Westburg*, 260 F.Supp. 636 (E.D.Pa. 1966) and *Foxworthy v. Sun Art Designs Inc.*, 42 U.S.P.Q.2d 1317 (S.D.Fla. 1997) – have nothing to do with confirming that its customer list falls into any of those categories. In *Westburg*, the plaintiff was *permitted* to inspect and copy records of defendant's sales of automobiles; in other words, compile a list of defendant's customers. But when the defendant brought it to the court's attention that the plaintiff was contacting those customers and indicting that defendant "was not an authorized Volkswagen dealer; and that it appeared that some . . . customers had been sold old Volkswagens when they had asked for new ones," the court entered a protective order prohibiting further contact. 260 F.Supp. at 637. And in *Foxworthy*, the party opposing discovery made a reasonable showing that its customer list was confidential. 42 U.S.P.Q.2d at 1318.[13]

---

[13] ADC relies on McCarthy on Trademarks to support its argument that customer lists are not discoverable. However, the McCarthy treatise merely notes that "[i]t has been held that defendant need not disclose in discovery the names of defendant's customers in order for plaintiff to question them regarding instances of actual confusion." *Id.* at §2314. The only case cited is *Foxworthy*.

If ADC considers its customer list information a trade secret, it does not say so, and it makes no

reference to the Uniform Trade Secrets Act. Georgia's version, the Georgia Trade Secrets Act of 1990,

OCGA §§ 10-1-760 through 10-1-767,[14] defines a "trade secret" as:

> information, without regard to form, including, but not limited to, . . . a list of actual or
> potential customers or suppliers which is not commonly known by or available to the public
> and which information:
>
> > (A) Derives economic value, actual or potential, from not being generally known
> > to, and not being readily ascertainable by proper means by, other persons who can
> > obtain economic value from its disclosure or use; and
> >
> > (B) Is the subject of efforts that are reasonable under the circumstances to
> > maintain its secrecy.

OCGA § 10-1-761(4). Under Georgia's Trade Secrets Act, it would be ADC's burden to prove both

---

[14] This assumes that Georgia law would apply to the determination of whether a Georgia company's customer list constituted a trade secret. The parties do not address this question but, in any event, Illinois law is not significantly different, and both states employ similar versions of the Uniform Trade Secrets Act. *See* Unif. Trade Secrets Act § 1 (amended 1985). Illinois' version of the Act defines a trade secret as:

[I]nformation, including . . . list of actual or potential customers or suppliers, that:

> (1) is sufficiently secret to derive economic value, actual or potential, from not being
> generally known to other persons who can obtain economic value from its disclosure
> or use; and
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain
> its secrecy or confidentiality.

765 ILCS 1065/2(d); *Learning Curve Toys, Inc. v. PlayWood Toys, Inc*, 342 F.3d 714, 721 (7th Cir. 2003). One apparent difference between Illinois and Georgia law is that Illinois law provides that customer lists and other customer information will be deemed a protectable trade secret only where the information has been developed by the employer over a number of years at great expense and kept under tight security. *Office Mates 5, North Shore, Inc. v. Hazen*, 234 Ill.App.3d 557,574, 599 N.E.2d 1072, 1084 (1st Dist. 1992). It should be noted that, while Autotech addresses the law regarding whether customer lists can be afforded protection as trade secrets, it did so in a response to another of ADC's discovery motions, which it filed in the wake of ADC's reply brief.. (*Autotech's Memorandum in Opposition to Motion to Compel and in Support of Autotech's Motion to Further Address ADC's Motion for Protective Order*, at 10).

prongs of this test, or its customer list information is not considered a trade secret. *Bacon v. Volvo Service Center, Inc.*, 266 Ga.App. 543, 544, 597 S.E.2d 440, 443 (2004). "While a client list may be subject to confidential treatment under the Georgia Trade Secrets Act, the information itself is not inherently confidential. Customers are not trade secrets. Confidentiality is afforded only where the customer list is not generally known or ascertainable from other sources and was the subject of reasonable efforts to maintain its secrecy." *Bacon*, 266 Ga.App. at 545, 597 S.E.2d at 443. The declaration of Mr. Marchuk – read in a light most favorable to ADC – perhaps makes out a sufficient case that ADC's customer list is a trade secret – although curiously, ADC never argues that it is.

The question then is under what circumstances can the presumptively confidential information be disclosed in discovery. Rule 26 does not allow a party to draw a conjurer's circle around the inquiry, but rather entrusts to the district court the discretion to determine the appropriate restrictions so that the interest in confidentiality is properly balanced with the need for discovery either to support a party's claim or defense.

### D.
### ADC's Customer List Information Must Be Produced Subject To Appropriate Restrictions

Autotech seems to argue that Judge Cooper's order of January 12, 2006, transferring venue to this court from the Northern District of Georgia requires that ADC turn over it customer list and that it do so without a protective order of any kind. (Autotech Response at 5). It is unclear whether Autotech is making a "law of the case" argument or is basing its contention on some other premise. In any event, Judge Cooper's Order did not resolve the discovery question presented here, and the "law of the case" requires that an issue actually have been decided. "Observations or commentary touching upon issues not formally

18

before the reviewing court do not constitute binding determinations." *Creek v. Village of Westhaven*, 144 F.3d 441, 445 (7th Cir. 1998). In its transfer order, the district court noted that the parties conceded that customer confusion was a salient issue in the case,[15] and that since Autotech's allegedly infringing acts have occurred throughout the nation,[16] "the parties should be able to secure witnesses to testify to consumer confusion in either this district or the Northern District of Illinois with relative ease." (*Autotech Response*, Ex. E, Order of Judge Cooper at 17-18). However, the record established that these potential witnesses were present in much greater numbers in and around the Northern District of Illinois than in Georgia. *Id.*

"Judges expect their pronunciamentos to be read in context. . . ." *Wisehart v. Davis*, 408 F.3d 321, 326 (7th Cir. 2005)(Posner, J.). Thus, it would come as a shock to the district court in Georgia to learn that in deciding a narrow venue question he had he had also implicitly decided a significant discovery issue regarding disclosure of customer lists even though that question was not presented to him. *Subsilentio* or assumptive resolution of an issue is not enough. *City of Kenosha v. Bruno*, 412 U.S. 507, 512-13 (1973); *Kramer v. Scientific Control Corp.*, 534 F.2d 1085, 1090 (3d Cir. 1976); *United States v. Bohle*, 445 F.2d 54, 65 (7th Cir. 1971), *rev'd on other grounds*, *United States v. Lawson*, 653 F.2d 299 (7th Cir. 1981)("However, there was apparently no challenge to the admission of this evidence...We think it clear that Becker was not intended to, and did not, resolve the question of the admissibility of records of mental diagnoses. Thus, we must approach it as an issue of first impression in

---

[15] ADC's reply brief now denies that customer confusion is even an issue.

[16] Autotech was the defendant in the Georgia case.

this court.").[17]

Of the four cases relied on by Autotech to support its entitlement to unrestricted and unconditional discovery of ADC's customer list only *Packman v. Chicago Tribune*, 267 F.3d 628 (7th Cir. 2001), is arguably pertinent as it discusses customer confusion. But it does not support Autotech's contention that it be allowed unfettered access to ADC's customer list information. The others cases Autotech cites are much farther off the mark: none discusses the issue at hand. *See Pure Imagination, Inc. v. Pure Imagination Studios, Inc.*, No. 03-6070, 2004 WL 2222269, *5 (N.D.Ill. Sept. 30, 2004 )(plaintiff submitted affidavit of its *own* customers); *Enesco Group Inc. v. Jim Shore Designs, Inc.*, No. 05-4371, 2005 WL 3334436, *5 (N.D.Ill. Dec. 6, 2005)(court refused to address sufficiency of evidence of customer confusion on summary judgment); *Ilapak Research & Development S.A. v. Record SpA.*, 762 F.Supp. 1318, 1322 (N.D.Ill. 1991)(addressing ownership of trademark).

Autotech's failure to have cited cases that have approved disclosure of customer lists even to competitors and ADC's corresponding failure to have cited pertinent authority in support of its position obviously cannot be the end of the analysis. The authorities are clear that in most cases the question is not whether customer lists will be produced, but under what circumstances. *Asch/Grossbardt,*, 2003 WL 660833 at * 2; *Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*, 200 F.R.D. 255, 260 (N.D.N.C. 2001). *See also Liberty Folder v. Curtis Anthony Corp.*, 90 F.R.D. 80, 82 (D.Ohio 1981); *Battle Creek Equipment v. Roberts Mfg. Co.,* 90 F.R.D. 85, 86 (D.Mich. 1981).

---

[17] The principle that no weight is to be attached to an unexamined holding dates back to Chief Justice Marshall. See *United States v. More*, 7 U.S. 159 (1805). *See also, Lopez v. Monterey County*, 525 U.S. 266, 281 (1999). The obvious reason for the limitation is that judges are neither omniscient nor clairvoyant and often the point under consideration in a subsequent case did not occur to the court or counsel in the earlier one. *See e.g., Newsome v. McCabe*, 256 F.3d 747, 751 (7th Cir. 2001).

One of the most commonly used safeguards is disclosure only to attorneys. *See Blanchard and Company v. Barrick Gold Corp.,* 2004 WL 737485 at *10-11 (E.D.La. 2004)(and cases cited); *Surface Shields, Inc. v. Poly-Tak Protection Systems, Inc.,* 2003 WL 21800424, *1 (N.D.Ill. 2003)(ordering production of customer list but allowing party to designate items as "attorney's eyes only" and strongly suggesting that parties enter into agreed protective order regarding alleged confidential information); *Seaga Mfg., Inc. v. Fortune Resources Enterprises, Inc.,* 2002 WL 31399408, *3-4 (N.D.Ill. Oct. 24, 2002)(allowing discovery of customer list subject to "attorney's eyes only" and allowing for removal of that restriction when warranted); *N.L.R.B. v. Cable Car Advertisers, Inc.,* 319 F.Supp.2d 991, 999 (N.D.Cal. 2004)(requiring production subject to a protective order"); *Asch/Grossbardt,,* 2003 WL 660833, *3 (allowing discovery pursuant to protective order limiting access to requested information on an "Attorney's Eyes Only" basis); *Liverware Publishing Inc. v. Best Software, Inc.,* 252 F.Supp 2d 74, 85 (D.Del. 2003)(customer lists disclosed only to "trial counsel"). *Compare, CS Holdings Inc. v. Redisi,* 309 F.3d 988, 996 (7th Cir. 2001)(error to deny defendant all access to plaintiff's customer data base; proper course was issuance of a protective order limiting access to attorneys); *Amtel Corp. v. St. Paul Fire & Marine Insurance. Co.,* 2005 WL 3692874 (N.D. Cal 2005)(confidentiality of customer lists sufficiently protected by protective order); *Network Computing v. Cisco Systems,* 223 F.R.D. 392, 396 (D.S.C. 2004)(plaintiff ordered to provide a customer list under protective order). *Compare Field Turf International, Inc. v. Triexe Mgmt. Corp.,* 2004 WL 866494 at *3 (N.D.Ill. 2004)(requiring production of current financial information to competitor on an "attorneys' eyes only" basis).

Thus, discovery of some customer information should be allowed, but subject to the restrictions of a protective order. Autotech, however, insists that an entire range of customer information ought to be

produced without any protective order under the terms of the parties' "covenant vendor agreement." (Autotech's Response at 1-2, 4). That agreement is a component of Autotech's breach of contract suit, and Judge Holderman denied it as a basis for access to the customer list in his ruling on Autotech's motion for a preliminary injunction on November 23, 2005. Discovery is not intended to be used to acquire indirectly the very relief that is supposed to await the determination of the action on the merits. *Liverware Publishing, Inc. v. Best Software, Inc.*, 252 F.Supp.2d 74, 85 (D.Del. 2003). To conclude that the agreement mandates discovery would in essence be to decide a part of the case here and now thereby inverting the basic order of things.

## CONCLUSION

This case, like so many, deals with a clash of pretending absolutes: ADC insists that it customer identities and related information are not discoverable under any circumstances, while Autotech insists that it is entitled to unrestricted access to the information. Both contentions are unpersuasive: customer lists are relevant and discovery must be hedged with appropriate restrictions. It is not desirable for a court to fashion such an order in the first instance, but for the parties, if they can. They are in the best position to structure a meaningful order that sensitively deals with the particulars that confront them and that are, at this early juncture, and given the specifics of their businesses not fully perceived by a court.[18]

For the foregoing reasons, ADC's motion for a protective order prohibiting all discovery of its customer list is DENIED. Within 14 days the parties shall present to the court an agreed protective order

---

[18] For example, Mr. Marchuk's declaration does not even say how many customers there are or where Autotech does business. The only clues to those questions are general references in the pleadings and in documents attached to Autotech 's response to the motion for a protective order.

consistent with this opinion and with the cases on which it relies that provides for a sufficient sampling of information that will allow appropriate inquiry into the issue of customer confusion. *Cf. Surface Shields, Inc. v. Poly-Tak Protection Systems, Inc.*, 2003 WL 21800424 at *1 (recommending that parties fashion their own protective order); *J. T. Eaton & Co., Inc. v. Atlantic Paste & Glue Co.*, 1987 WL 17084 at *5 (E.D.N.Y. 1987)(parties must agree to a protective order that would safeguard the patent holder's interest in preserving the confidentiality of its customer lists); *Asch/Grossbardt,*, 2003 WL 660833, *2; *Battle Creek Equipment v. Roberts Mfg. Co., supra,*

ENTER: _____

UNITED STATES MAGISTRATE JUDGE

DATE: 4/20/06

23