IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AUTOTECH TECHNOLOGIES LIMITED )
PARTNERSHIP, )
　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　　　　　)
　　　　v. )
　　　　　　　　　　　　　　　　　　　　)
AUTOMATIONDIRECT.COM, INC., )
TIMOTHY HOHMANN and KOYO )
ELECTRONICS INDUSTRIES CO., LTD. )　　No. 05 C 5488
　　　　　　　　　　　　　　　　　　　　)
　　　　　Defendants. )　　Chief Judge Holderman
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)　　Magistrate Judge Cole
AUTOMATIONDIRECT.COM, INC., )
　　　　　　　　　　　　　　　　　　　　)
　　　　　Plaintiff, )
　　　　　　　　　　　　　　　　　　　　)
　　　　v. )
　　　　　　　　　　　　　　　　　　　　)
AUTOTECH TECHNOLOGIES L.P., )
AVG ADVANCED TECHNOLOGIES, INC., )
SHALLI INDUSTRIES, INC., and )
SHALABH KUMAR, )
　　　　　　　　　　　　　　　　　　　　)
　　　　　Defendants. )

## MEMORANDUM OPINION AND ORDER RE:
## ADC'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES

On October 27, 2006, Automationdirect.com ("ADC") served 12 contention interrogatories on Autotech Technologies Limited Partnership, AVG Advanced Technologies Limited Partnership, Shalli Industries, Inc., and Shalabh Kumar (collectively "Autotech"), asking for factual information to support the damage claims raised in Autotech's Third Amended Complaint. It also sought the records supporting those interrogatory answers. When Autotech responded on January 19, 2007,

ADC found the answers unresponsive and filed a motion to compel on March 27, 2007. (Dkt. #293). When the parties appeared on ADC's motion on April 4, 2007, Autotech produced amended answers to the interrogatories. Still not satisfied, on April 10th Autotech sent ADC a punch list of deficiencies it wanted corrected, not later than April 13th. When Autotech did not meet that deadline, ADC filed a motion to compel and for sanctions. (Dkt. # 325).

The instant motion fails to comply with Local Rule 37.2, which requires that a party filing a motion to compel discovery include:

> a statement (1) that after consultation in person or by telephone and good faith attempts to resolve differences they are unable to reach an accord, or (2) counsel's attempts to engage in such consultation were unsuccessful due to no fault of counsel's. Where the consultation occurred, this statement shall recite, in addition, the date, time and place of such conference, and the names of all parties participating therein. Where counsel was unsuccessful in engaging in such consultation, the statement shall recite the efforts made by counsel to engage in consultation.

In its supporting memorandum, ADC says that there have been "LR 37 efforts on the part of ADC's counsel" and that it spoke with opposing counsel and asked him to remedy the deficiencies but that opposing counsel declined. (*ADC's Memorandum in Support of Its Renewed Motion*, at 2, 14). That is simply not good enough under the Local Rules, and is certainly not good enough in this case given the parties' inability to resolve the most rudimentary of discovery disputes without court intervention.

To achieve the explicit purpose of Local Rule 37.2 "[t]o curtail undue delay and expense in the administration of justice," courts are mandated to refuse to hear any motions for discovery and production of documents under Rules 26-37 unless the motion includes the statement prescribed by the Rule. *See also* Memorandum Opinion and Order of 9/10/07 re: Autotech's Motion to Compel C-More Documents. Obviously, the goals the Rule seeks to achieve have not been met here. At last

2

count, as of September 4, 2007, the parties have filed 22 discovery motions in this case, exclusive of motions to adjust discovery deadlines. It is not merely the volume of motions that is of concern. Rather, the real gravamen of this statistic is that the parties do not appear to have spent the time and effort envisioned by Local Rule 37.2 in attempting to resolve their differences. That impression has some empirical support. *See* Memorandum Opinion and Order of 9/10/07 re: Autotech's Motion to Strike Attorneys' Eyes Only Designations.

This dispute is a perfect example. This is the second installment of this motion. Along with the first installment, ADC managed to detail the parties' efforts at resolution of the dispute in its supporting memorandum. ADC discussed what it perceived as deficiencies in Autotech's interrogatory answers over the telephone with Autotech on March 21, 2007. According to ADC, Autotech agreed to resolve those deficiencies by March 26th. But it would seem that all Autotech had agreed to do was consider it, and in fact offered on March 27th to supplement its responses within 14 days – or by April 10th.[1] ADC responded by telling Autotech this was unacceptable, and

---

[1] ADC suggested that its version of the parties' agreement – if there was one – was proven by the email it sent Autotech:

> This email will confirm the substance of our 3-21-2007 LR 37.2 telephone conference. We will hold off on filing our motion to compel until Monday, Mar. 25, 2007 while you determine whether you will address the deficiencies in Autotech's answers to the fourth set of interrogatories. Absent responsive answers addressing the deficiencies set forth below by Monday, Mar. 25, 2007, we will file our motion so as to obtain discovery in time to complete discovery.

(Dkt. #294; Ex. 3). The notion that one can create evidence through the simple expedient of writing a letter is a commonly accepted fallacy. *See* discussion in *Murata Mfg. Co., Ltd. v. Bel Fuse, Inc.*, 422 F.Supp.2d 934, 941 (N.D.Ill. 2006)(collecting cases, including Justice Holmes' opinion in *A.B. Leach & Co. v. Peirson*, 275 U.S. 120 (1927)):

> A man cannot make evidence for himself by writing a letter containing the statements that he wishes to prove. He does not make the letter evidence by sending it to the party against whom he wishes to prove the facts. He no more can impose a duty to answer a charge than
> (continued...)

it filed its motion to compel, noticing it up for April 4, 2007, and demanding supplemented responses by April 7th. However else one might denominate this preoccupation with a matter of days, it is difficult to say that it is an indicia of good faith. Autotech appeared at the hearing with supplemented responses in hand. The parties were instructed to work out their differences.

The history of the instant motion (and that of a number of its predecessors) when combined with the uninformative Rule 37.2 statement that there was a demand and a rejection, it cannot be concluded that there has been the kind of good faith effort to resolve the controversy envisioned and mandated by the Rule. The temptation not to consider the motion, as Rule 37.2 instructs, must yield to the need to resolve the outstanding issues as rapidly as circumstances will allow so that the case can be ready for trial. *Cf. Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir.1995) ("decision whether to apply [a local] rule strictly or to overlook any transgression is one left to the district court's discretion"); *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 351, 356 (N.D.Ill. 2005)(same)(collecting cases).

Autotech's claimed willingness to again try to satisfy ADC's demand for more detailed answers is tempered by two provisos: (1) it points out that there is more discovery to come, and that additional information will come to light that could affect its responses; and (2) it complains that it is hard to respond to discovery and run a business at the same time. (*Response to ADC's Renewed Motion*, at 3-4). The answer to the first objection is that discovery is intrusive, unpleasant, time-

---

[1](...continued)
he can impose a duty to pay by sending goods. Therefore a failure to answer such adverse assertions in the absence of further circumstances making an answer requisite or natural has no effect as an admission. *Id.* at 128.

Significantly, Autotech responded here, disagreeing with ADC's characterization of the parties' meeting.

consuming and costly. It is the bane of modern litigation. *Rossetto v. Pabst Brewing Co., Inc.*, 217 F.3d 539, 542 (7th Cir. 2000)(Posner, J.).[2] It is, like life itself, "nasty [and] brutish. . . ." Hobbes, Leviathan, Chapter XIII. Unfortunately, it is not generally "short." However, it is the inevitable concomitant of the litigation that *Autotech initiated*. Having made the informed judgment that the potential benefits of action outweighed the detriments of inaction, it can hardly be heard to complain. Finally, if the President of the United States of America can respond to discovery and run the country at the same time, *Clinton v. Jones*, 520 U.S. 681, 706 (1997), so too can Autotech's principal – who, it may be noted, has been able to put aside Autotech's affairs in order to appear as an observer at virtually every court session relating to discovery issues.

There is an additional point that requires mention. Like other arguments that Autotech has made, this one is supported only by conclusory statements in the briefs. Earlier, there was the representation that unless Autotech's then in-house lawyers had access to all documents produced by ADC, the financial burden on Autotech would be "disastrous." *Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, 237 F.R.D. 405, 412-413 (N.D.Ill. 2006). That representation has proven to be as unprophetic as it was unsupported. It was pointed out in deciding Autotech's motion that conclusory allegations were unpersuasive and pointless. *See id.* (collecting cases). The most recent representation demonstrates that that caution has not its desired effect.

---

[2] In an address to the Bar Association of the City of New York in 1921, Learned Hand, then a young district judge, lamented the "atmosphere of contention over trifles, the unwillingness to concede what ought to be conceded, and to proceed to the things which matter. Courts have fallen out of repute; many of you avoid them whenever you can, and rightly. About trials hang a suspicion of trickery and a sense of a result depending upon cajolery or worse. I wish I could say that it was all unmerited. After now some dozen years of experience I must say that as a litigant I should dread a lawsuit beyond almost anything else short of sickness and death." Lectures on Legal Topics, Learned Hand, The Deficiencies Of Trials to Reach the Heart of the Matter, 105 (The MacMillan Co. 1926). And this was long before modern discovery rules came on the scene.

Then there was the representation by Autotech's president and owner – this time under oath – that all documents of a certain kind had been produced. That representation proved to be false. And now we have the representation that it is just too time-consuming to run a business and comply with otherwise lawful discovery. Even if that were a legitimate excuse, given the absence of proof and the apparent falsity of prior representations, it is not one that I would find credible. *Cf. United States v. Maya-Azua*, 30 F.3d 140 (9th Cir.1994)(unpublished decision, 1994 WL 319132 at *2); *United States v. Boyd*, 833 F.Supp. 1277, 1347 (N.D.Ill.1993).

This leaves the argument that there is more discovery to come and that additional information could affect responses. If the argument is that no supplementation is necessary until discovery is over or nearing completion, it is a nonstarter. Rule 26(e)(2) imposes on parties a duty to seasonably amend a prior response to an interrogatory or request for production if the party learns the response is in some material respect incomplete or incorrect. The Rule does not allow people to wait until the end of discovery and then make one comprehensive supplement. It requires prompt supplementation as one learns that prior responses are underinclusive or wrong. Autotech essentially concedes that its responses are underinclusive. That concession triggers a duty to supplement its present answers. A review of the responses as they currently stand demonstrates that Autotech already *has* the information necessary to makes its responses accurate. Indeed, Autotech's responses do not even suggest that additional information might be forthcoming as more is learned; instead, they suggest that this is as good as it gets. Hence the excuse that it is awaiting further discovery is beside the point. The responses must be "amended" – as Autotech puts it – now.

The interrogatories request that, for each fact Autotech states in support of a claim for relief, it identify every person with knowledge of each fact. " (*ADC's Memorandum in Support of Its*

6

*Renewed Motion*, Ex. 3). Instead, Autotech simply lists 31 names, without specifying who knows what about which interrogatory. (*Id.*, at 2). This is the sort of information Autotech would have access to now, not later as discovery proceeds. Indeed, in order to be able to identify those with relevant knowledge, they have to know what that information relates to, otherwise the identifications would be made in reckless disregard of their truthfulness.

The interrogatories also request that Autotech identify the materials that support its various damage claims. While Autotech posits an assortment of financial figures in its responses to interrogatories nos. 11 and 12, it fails to point to any documentation to support its calculations. For example, it claims to have spent $720,000 to develop a 15-inch display, but does not indicate what documents support that claim. If those documents exist, they must be in Autotech's possession or under its control. If they do not, Autotech can say so. What is certain, is that these are not documents ADC will be producing at some point in the future and that there is no justification for delaying a response to interrogatories nos. 11 and 12, which are liberally seasoned with such deficiencies.

Its response to interrogatory no. 18, Autotech merely says it has produced the documents supporting its claim, without identifying which ones they are. That is an insufficient response that is unaffected by the fact that discovery is ongoing. Similarly, its responses to interrogatories 19 and 20 describe the supporting documents in terms that are far too general to allow meaningful identification. Unless there has been substantial noncompliance with Rule 11, Federal Rules of Civil Procedure, Autotech knows what documents it will employ to prove the claims it has brought. The risks of noncompliance with legitimate discovery requests can have lethal consequences. *See* Rule 37(c)(1); *Lear Siegler Diversified Holdings Corp. v. Regal-Beloit Corp.*, 1999 WL 436593, *1 -2

(N.D.Ill. June 22, 1999).

Autotech is ordered to supplement the responses at issue within 14 days of this order. ADC shall have five business days to review those responses. If it believes it has good faith, legitimate objections, ADC must immediately schedule a meeting with Autotech to discuss each interrogatory response separately and attempt to resolve the objections. If any disputes remain, the parties shall file a joint statement providing the information required in Local Rule 37.2, along with the time spent on each interrogatory at the meeting, and the arguments advanced by both sides. The statement should be sufficiently detailed to allow a real appreciation of the parties' efforts, and allow the court to determine whether they actually did confer in good faith. Only then will any further motion to compel on this issue be considered.

## CONCLUSION

ADC's motion to compel [# 325] is GRANTED insofar as Autotech is ordered to serve amended responses to the interrogatories at issue within fourteen days. Thereafter, the parties are to proceed as directed in this order.

ENTERED:_____
UNITED STATES MAGISTRATE JUDGE

DATE: 9/12/07