IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AUTOTECH TECHNOLOGIES LIMITED PARTNERSHIP, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| AUTOMATIONDIRECT.COM, INC., TIMOTHY HOHMANN and KOYO ELECTRONICS INDUSTRIES CO., LTD. | ) ) ) ) ) | No. 05 C 5488 |
| Defendants. | ) ) ) | Chief Judge Holderman |
| | ) ) | Magistrate Judge Cole |
| AUTOMATIONDIRECT.COM, INC., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| AUTOTECH TECHNOLOGIES L.P., AVG ADVANCED TECHNOLOGIES, INC., SHALLI INDUSTRIES, INC., and SHALABH KUMAR, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Autotech Technologies Limited Partnership, AVG Advanced Technologies Limited Partnership, Shalli Industries, Inc., and Shalabh Kumar (collectively referred to hereafter as "Autotech") move to compel Koyo Electronics Industries Co., Ltd. ("Koyo") to produce all information regarding the development and structure of its C-More touch screen products, including its source code, and for unspecified sanctions.

The present dispute stems from the filing of Autotech's Third Amended Complaint on

August 1, 2006, without leave of court – indeed, without so much as requesting leave of court – in contravention of Fed.R.Civ.P. 15(a). (Dkt. # 220). In it, Autotech introduced a copyright infringement claim against AutomationDirect.com ("ADC"), Tim Hohmann, and Koyo (collectively, "ADC parties"). Autotech claimed a copyright to "the audiovisual content and the text of the manual" and "the software programs of the Autotech parties' EZTouch panels." (Third Amended Complaint, ¶¶ 115-16). The copyright infringement claim was addressed to audiovisual content and screen objects. It asserted that the defendants had access to certain visual objects contained in EZTouch programming software and that Defendants copied those objects. (Third Amended Complaint; ¶¶ 117-21). The complaint does not contain similar language with respect to the overall EZTouch software program, although it does summarize the count by stating, generally, that that "Defendants' infringement of Autotech's and Shaltech's copyrights in (a) the audiovisual content and text of manual for Autotech's EZTouch panels *and (b) the software programs for Autotech's EZTouch panels* is willful, intentional, and deliberate ...." (Id.; ¶ 124)(Emphasis supplied). Attached to the complaint were print-outs of EZTouch screen objects that allegedly were infringed, but no other materials suggesting a claim for infringement of other elements.

It would have been entirely appropriate for Judge Holderman to have stricken the Third Amended Complaint given the improper manner in which it was filed. *Harmon v. Leibach*, 2003 WL 22259208, *1 n.1 (N.D.Ill. Oct. 2, 2003); *Williams v. Cook County*, 1997 WL 779075, *1 n.1 (N.D.Ill. Dec. 12,1997). Instead, on August 11, 2006, he allowed it to stand, but chastised Autotech for violating Rule 15(a) and warned it to follow the federal rules in the future.

The ADC parties then initiated discovery into this newly minted infringement claim. At the time, the standard for pleadings was extremely liberal, *see Swierkiewicz v. Sorema N.A.*, 534 U.S.

2

506 (2002), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. _ ,127 S.Ct. 1955 (2007) was a year away. The Seventh Circuit was wedded to this liberal standard in its most expansive form. Indeed, it went so far as to warn: "Any district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain...' should stop and think: What rule of law *requires* a complaint to contain that allegation?" *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir.2005) (Emphasis in original). All that a complaint had to do was "name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date)...." *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006). Details were the stuff of discovery. *Id.*

Thus, on August 18, 2006, shortly after the complaint was allowed, the ADC parties initiated discovery that sought more detail concerning the specific works that Autotech claimed were infringed, together with more information about the manner in which Autotech claimed that infringement had occurred. The discovery requests are exemplified by the following:

> [Interrogatory No. 4] Identify, with specificity (by product, file and line of object or source code, where appropriate) those portions of the Works that the Autotech Parties claim have been infringed, including but not limited to as alleged in the Autotech Parties' Third Amended Complaint.
>
> [Document Request No. 3] All documents that evidence, refer or relate to the creation of the Works, including but not limited to drafts, outlines and any previous or alternate versions.
>
> [Document Request No. 4] A complete copy of each Work that the Autotech Parties claim that the ADC Parties have infringed.
>
> [Document Request No. 8] All documents evidencing, referring or relating to the claimed infringement by the ADC Parties of any copyrights, patents, trade secrets, confidential information or other intellectual property rights of the Autotech Parties, including but not limited to any rights of the Autotech Parties in the Works.

(*Koyo's Response*, Trigg Decl. Exs. 1,2). Although answers were due on September 18, 2006,

3

nothing was heard from Autotech for the next three months. Then, on December 21, 2006, Autotech's tardy response carefully explained and delimited the Third Amended Complaint's copyright infringement claim:

> The Autotech Parties state generally that, at the present time, *they are not alleging copyright infringement by the ADC Defendants based upon source code infringement* but reserve the right to do so *and to amend the pleadings to so allege* pending further investigation and the ADC Defendants' responses to discovery regarding C-More. At present, *the Autotech Parties are alleging and pursuing copyright infringement based upon the ADC Defendants' copying of the EZTouch screen objects and the interactive graphical appearance of the objects* as supported by the video of said objects submitted to and approved by the U.S. Copyright office. . . . If and when the Autotech Parties *amend their pleadings to specifically allege source code infringement*, the Autotech Parties will seasonably supplement its [sic] answers to these interrogatories.

(*Koyo's Response*, Trigg Decl., Exs. 3, 4 (Emphasis supplied)).[1]

This disclaimer, coming as it did from the author of the Third Amended Complaint – and having come after three months of consideration by Autotech – could scarcely have been more authoritative or have made more clear that Autotech was not alleging any copyright infringement claim relating to source code.

While Autotech may have "reserved the right" to amend its complaint "to specifically allege source code infringement," it has not made application to Judge Holderman for permission to do so. Nor has it amended its discovery response to reflect any issues regarding source code. *See* Fed.R.Civ.P. 26(e)(2)("a party is under a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response

---

[1] Computer programmers typically write programs in a programming language that can be read by humans – called the "source code." It is then generally converted or compiled into a computer readable code or "machine language" expressed in a binary format. *Microsoft Corp. v. AT & T Corp.*, – U.S. –, –, 127 S.Ct. 1746, 1760 (2007).

4

is in some material respect incomplete or incorrect."). Consequently, the ADC parties were entitled to rely on Autotech's interrogatory answers that explicitly defined the scope of its additional claim. *Cf., Harris v. City of Chicago*, 266 F.3d 750, 754 (7th Cir. 2001). *Compare Abraxis Bioscience, Inc. v. Mayne Pharma (USA), Inc.*, 467 F.3d 1370 (Fed.Cir. 2006)(where the inventor defines a term, the inventor's lexicography governs); *Cook Biotech Inc. v. Acell*, 460 F.3d 1365, 1374 (Fed.Cir. 2006)(explicit disclaimers or specification disavowals in patents claim will limit the patent claim). And it is that definition which determines relevancy. *See Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, 2007 WL 1673563 at *6-7 (N.D.Ill. 2007)(plaintiff's representation that it would not use information sought in discovery for a particular purpose made a request for the information irrelevant)

The issue of source code did not arise again until March 22, 2007, when Autotech served a broad discovery request for production of documents – its first new discovery request in over a year. Significantly, since July 5, 2006, discovery had been set to close on April 16, 2007. Given the fact that the ADC parties had 30 days to respond, Fed.R.Civ.P. 34(b), the request was an obvious violation of Local Rule 16.1, Standing Order Establishing Pretrial Procedure. ("Except to the extent specified by the court on motion of either party, discovery must be *completed* before the discovery closing date. Discovery requested before the discovery closing date, but not scheduled for completion before the discovery closing date, does not comply with this order."); *Finwall v. City of Chicago*, 239 F.R.D. 494, 499 (N.D.Ill. 2006). That same day, Autotech filed a motion for an eight-month discovery extension before Judge Holderman. (Dkt. #286).

The motion did not mention discovery regarding the six-month old copyright claim or the document request Autotech had just served in violation of the Local Rules. Instead, Autotech

complained that the ADC parties had produced 1000 pages of documents in January 2007 – on what Autotech called "the eve of discovery closing," although the production occurred about four months before the deadline. Judge Holderman granted Autotech's motion on April 27, 2007. As it was after discovery would have closed and the ADC parties' responses would have been due, it did not change the fact that, when served, the discovery request at issue was inappropriate under the rules.

Meanwhile, the ADC parties had responded, interposing many of the usual objections, but also specifically pointing out that the request violated the Local Rules. As the parties corresponded over this discovery dispute, however, the issue crystallized into whether Koyo had to produce discovery relating to the source code for its C-More touch screen products. (*Autotech's Memorandum in Support*, at 2-4; Exs. 1-6; *Koyo's Response*, at 5-6). This, despite Autotech's December 2, 2006 discovery response disavowing any claim for infringement of source code. Not surprisingly, the ADC parties did not comply.

Now, Autotech demands these documents, wants an order requiring Koyo to produce these documents, and wants sanctions entered against Koyo for not producing them right away. Autotech submits that the "information is relevant to its claim of copyright infringement under Count XIII of its Third Amended Complaint." (*Autotech's Memorandum in Support*, at 4). Koyo argues that it is irrelevant, given the scope of Autotech's copyright infringement claim as defined by Autotech in its December 21, 2006 discovery response. After a review of the parties' submissions, Autotech's motion must be denied.

Under the Federal Rules of Civil Procedure, discovery is indeed broad, but discovery must still be relevant to the claim or defense of any party. Fed.R.Civ.P. 26(b)(1). In December, 2006, Autotech expressly defined and delineated the scope of its infringement claim and excluded from

the ambit of that claim any claim for infringement of source codes. It has not withdrawn those representations or sought permission to amend for a fourth time its complaint. Until the Chief Judge permits that undertaking, ADC is entitled to take Autotech at its word as to the scope of the claim. Autotech's analysis of its own claim defines the scope of relevancy and makes irrelevant the discovery Autotech is demanding. *Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, 2007 WL 1673563 at *6-7)(plaintiff's insistence that it would not use information sought in discovery for a particular purpose made a request for the information irrelevant).[2]

Autotech's claim that it must have the discovery into Koyo source codes before it can even think of alleging a claim for copyright infringement of its source codes is singularly unpersuasive. According to Autotech, under *Twombly*, it could not have alleged source code infringement at the time it filed its Third Amended Complaint because discovery on the issue had not taken place. (*Autotech's Reply*, at 6). *Twombly* did not govern Autotech's allegations in August of 2006; *Swierkiewicz* and *Kolupa* did, and nothing in the pleading rules required Autotech's premeditated and carefully phrased disavowal in its December 2006 discovery response of any claim of source code infringement.

The Seventh Circuit has made clear that discovery is not to be used as a fishing expedition to see what may turn up. *EEOC v. Harvey L. Walner & Associates*, 91 F.3d 963, 971 (7th Cir. 1996). *See also MacKnight v. Leonard Morse Hospital*, 828 F.2d 48, 52 (1st Cir. 1987). Nothing in *Twombly* authorizes a different rule. Quite the contrary. Under *Twombly*, a party need only plead

---

[2] It is difficult to credit Autotech's attempt to portray itself as a victim of circumstance, especially given its reliance on unsupported, undeveloped, technological aphorisms to state its case, without so much as a nod to the applicable case law.

7

"enough to raise a right to relief above the speculative level." *Id.* at 1965. No facts are needed beyond those that would state a claim to relief that is plausible on its face. *St. John's United Church of Christ v. City of Chicago*, _F.3d_, 2007 WL 2669403 at *7 (7th Cir. 2007).

Two weeks after *Twombly*, the Supreme Court in *Erickson v. Pardus*, 127 S.Ct. 2197 (2007), reaffirmed that under Rule 8 "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" 127 S.Ct. at 2200. The teaching of *Erickson* and *Twombly*, taken together, is – according to the Seventh Circuit – that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8. However, it is not until that occurs that a complaint is subject to dismissal for failure to state a claim upon which relief can be granted. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, _F.3d_, 2007 WL 2406859 at *4 (7th Cir. 2007).

Thus, even if *Twombly* had been applicable in December 2006 or at the time the Third Amended Complaint was filed, Autotech would not have had to plead a line-by-line comparison of the source codes. As the Supreme Court said in *Twombly*, a complaint does not need detailed factual allegations, although it does require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. It is enough if the factual allegations raise a right to relief above the speculative level, 127 S.Ct. at 1964 -1965.

Beyond that, Autotech's explanation of why the materials it seeks are relevant to its claim of copyright infringement of screen objects and graphics displays is incorrect, pretextual, and overly simplistic. According to Autotech, "[o]ne needs only the very basic knowledge and layman's understanding of computers and technology in order to recognize that source-code, object code, and

8

file structure are part of what is responsible for creating the screen objects and graphical appearance displayed on a touch panel screen." (*Autotech's Reply*, at 3). Not surprisingly, Autotech makes no attempt to support the contention that in a copyright infringement case, a layman (with a rudimentary knowledge of computers) could conclude that consonance between graphical appearance on competing touch panel screens could only have resulted from infringement of source-code. That is plainly a matter that would require expert testimony. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); Rules Rule 701 and 702, Federal Rules of Evidence.

If it is so obvious that ADC could not have copied the EZTouch "screen objects and the interactive graphical appearance of the objects" without also copying the source code, Autotech would never have made the sworn disavowal it did in its December 21 discovery response. After all, if the source code infringement was obvious to a layman, it could not have escaped the attention of Autotech, with its expertise and intense involvement in the case. That Autotech made the disavowal it did, belies the current, unsupported claim of intuitive obviousness and demonstrates that a source code violation is not an indispensable prerequisite to the very distinct infringement Autotech said in its December 2006 discovery response was all that it was claiming in the Third Amended Complaint.[3]

Autotech's contention ignores the distinction between the "literal" and "nonliteral" elements of a computer program, and the differing analyses regarding the copyright protections afforded them and whether they have been infringed. *See, e.g., General Universal Systems, Inc. v. Lee*, 379 F.3d

---

[3] Autotech's sworn interrogatory answers make clear that in Autotech's view, infringement of source code and infringement for copying screen objects and the interactive graphical appearance of the objects are two entirely different matters.

9

131, 143 (5th Cir. 2004); *MiTek Holdings, Inc. v. Arce Engineering Co., Inc.*, 89 F.3d 1548, 1555 (11th Cir. 1996); *Lotus Development Corp. v. Borland Intern., Inc.* 49 F.3d 807, 814-15 (1st Cir. 1995); *Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1341 (5th Cir. 1994); *Johnson Controls, Inc. v. Phoenix Control Systems, Inc.*, 886 F.2d 1173, 1175 (9th Cir. 1989).

A cursory review of the case law fails to demonstrate that a claim for copyright infringement of a user interface necessitates a review of source codes, as opposed to a comparison of the interfaces themselves – precisely as Autotech stressed in its December 2006 responses to discovery. In *MiTek Holdings, Inc.*, for example, the Eleventh Circuit recognized that "a user interface, [such as] a screen display (itself an audiovisual work), may be entitled to copyright protection as a compilation." 89 F.3d at 1558. The Court of Appeals affirmed the district court's decision that "virtual identicality" between the two implicated programs was lacking because, in part, one program "depict[ed] its commands as icons in the Windows environment" while the other program displayed them as words. *Id.* Source code did not enter into the calculus.

Other cases might suggest otherwise, but Autotech has not mentioned any.[4] It is not the court's responsibility to research and construct a party's arguments for it. *United States v. McLee*, 436 F.3d 751, 760 (7th Cir. 2006); *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002); *Spath v. Hayes Wheels Int'l-Indiana, Inc.*, 211 F.3d 392, 397 (7th Cir.2000).

---

[4] Autotech cites only *Dynamic Microprocessor Associates v. EKD Computer Sales*, 919 F.Supp. 101 (E.D.N.Y.,1996) and *Member Services, Inc. v. Security Mut. Ins.*, 2007 WL 778141, *1 (N.D.N.Y. Mar. 12, 2007) to support its claims of relevancy. (*Autotech's Memorandum in Support of Motion to Compell*, at 6-7). Neither advances its cause. In *Dynamic Microprocesser*, the copyright infringement claim did not target a nonliteral element like a graphic interface, but a literal element: the software program itself. Moreover, the party seeking discovery demonstrated relevancy through the use of expert affidavits – affidavits that went unchallenged by the discovery opponent. 919 F.Supp. at 104-05. And in *Member Services*, the complaint specifically alleged infringement of source code.

Indeed, to do so would skew the adversary system. *See Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 613-614 (7th Cir. 2006); *Burdett v. Miller*, 957 F.2d 1375, 1380 (7th Cir. 1992)(Posner, J.).

Autotech has neither sought to secure permission from Judge Holderman to amend its Third Amended Complaint nor repudiated its own explication of its pleading. What it is attempting to do now is to do obliquely what it assured the ADC parties and Judge Holderman would only occur through compliance with the Federal Rules of Civil Procedure, namely amending the pleadings to specifically allege source code infringement. Autotech has disavowed any claim of source code infringement. It is bound by that decision until an appropriate application is made to Judge Holderman to amend its complaint for a fourth time.

Finally, Autotech asks for an entry of unspecified sanctions against ADC in the caption of its motion. However, it does not discuss sanctions in the body of its motion or its supporting memorandum. Quite apart from the fact that Autotech has lost the motion, the skeletal presentation constitutes a waiver of the argument. *R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper*, 462 F.3d 690 (7th Cir.2006); *Bretford Mfg., Inc. v. Smith System Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir.2005); *United States v. Cusimano*, 148 F.3d 824, 828 n.2 (7th Cir. 1998). That, however, does not totally resolve the fee question.

Under Rule 37(a)(4)(B), because its motion is denied, Autotech may be required to pay the reasonable expenses, including attorney's fees, that ADC incurred in opposing the motion. As Judge Easterbrook has said, "'[t]he great operative principle of Rule 37(a)(4) is that the loser pays.'" *Rickels v. City of South Bend, Ind.*, 33 F.3d 785, 786-87 (7th Cir. 1994). Ultimately, the Rule finds support in Dewey's insight that: "Liability is the beginning of responsibility. The individual is held accountable for what he has done in order that he may be responsive in what he is going to do."

11

Only thus do people gradually "learn by dramatic imitation to hold themselves accountable, and liability becomes a voluntary deliberate acknowledgment that deeds are our own, that their consequences from us." John Dewey, *Morals and Conduct,* in Man and Man: The Social Philosophers, 484-485 (J. Cummins and R. Linscott Ed.1954). By imposing liability, fee shifting encourages voluntary resolution of disputes and curtails the ability of litigants to use legal processes to heap detriments on adversaries (or third parties) without regard to the merits of the claims. *Rickels,* 33 F.3d at 787.

## CONCLUSION

For the foregoing reasons, Autotech's motion to compel and for sanctions against Koyo [#358] is DENIED. Pursuant to Rule 37, Autotech shall pay the reasonable attorneys' fees and costs incurred by the ADC parties in responding to this motion. The parties are urged to agree on an amount.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 9/18/07