IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AUTOTECH TECHNOLOGIES LIMITED PARTNERSHIP, <br><br> Plaintiff, <br><br> vs. <br><br> AUTOMATIONDIRECT.COM, INC., TIMOTHY HOHMANN and KOYO ELECTRONICS INDUSTRIES CO., LTD. <br><br> Defendants. | <br><br><br><br><br><br><br><br><br>No. 05 C 5488 <br><br>Judge James F. Holderman <br><br>Magistrate Judge Jeffrey Cole |
| AUTOMATIONDIRECT.COM, INC., <br><br> Plaintiff, <br><br> vs. <br><br> AUTOTECH TECHNOLOGIES L.P., AVG ADVANCED TECHNOLOGIES, INC., SHALLI INDUSTRIES, INC., and SHALABH KUMAR, <br><br> Defendants. | |

## MEMORANDUM OPINION AND ORDER
### RE MOTION FOR SANCTIONS AND ATTORNEYS FEES

On February 8, 2007, Shalabh Kumar, Autotech's president, provided a sworn declaration that he "reviewed all outstanding requests for production of documents and that after an exhaustive search and review, to the best of [his] knowledge, there [were] no further documents to be produced." (Dkt. # 391, Ex. A). But when he was deposed a month later, he admitted that there were two customer relations management databases that had not been reviewed. (ADC's

*Memorandum in Support of Its Motion to Compel*, Dkt. # 315, at 3).

The parties discussed extracting the information from those databases, but Autotech maintained that it would be impossible, or nearly so, to do it. When ADC contacted one of the vendors of the software involved, however, it learned that the production could be accomplished "easily." (*ADC's Memorandum in Support of Its Motion to Compel*, Dkt. # 315, at 4). ADC offered to retain the vendor to perform the task at ADC's expense, but received no response from Autotech. (*Id.*, at 5). With that, in April 2007, ADC filed a motion to compel production of customer communications from Autotech's customer relations database, known as the "Goldmine" database. (Dkt. #314). ADC sought customer communications relating to:

> any inquiry or other comment or statement regarding any actual or assumed association, affiliation or connection between [Autotech] and their products or trademarks on the one hand and ADC and their products or trademarks on the other hand from December 1, 2004 to present; and
>
> . . . instances of which [Autotech has] actual or hearsay knowledge of any inquiry, complaint or other communication regarding the quality or lack of quality of goods sold under the EZTouch mark, the EZText mark or the EZAutomation marks.

(*ADC's Memorandum in Support of Its Motion to Compel*, Dkt. # 315, at 2).[1]

Briefing on the motion was stayed when Autotech proposed that ADC hire a consultant to perform a keyword search on the database at Autotech's Bettendorf, Iowa headquarters. The parties quarreled over the keywords, but finally agreed on a list for the search. ADC's consultant performed the search July 2nd and 3rd of 2007. Afterward, he compiled a table of the results and provided it to ADC. ADC then selected the searches for which it wanted Autotech to print records. In a letter

---

[1] In its August 2007 motion to compel, ADC stated that it learned that the database could be queried electronically in Autotech's response to ADC's April 2007 motion to compel. (*ADC's Brief in Support of Renewed Motion*, Dkt. #391, at 4).

dated July 11, 2007, it provided Autotech with a chart of the queries it wanted printed. (Declaration of James Trigg, Ex. 2). The letter also asked that Autotech "produce the complete record with all pertinent information, such as date, customer name, product involved, etc." and referred Autotech to the kinds of documents ADC had earlier produced. (*Id.*).

The volume totaled approximately 10,000 pages. At that point in this litigation, ADC had produced 27,000 pages of documents in discovery. (*ADC's Brief in Support of Renewed Motion to Compel*, Dkt. # 391, at 4-5). Autotech proposed that ADC's lawyers visit Bettendorf where the results would be made available for them. (*Id.*, at 5). ADC rejected as restrictive and unnecessary this condition and proposed that Autotech produce the materials subject to a "clawback" agreement whereby ADC would return documents subsequently deemed not relevant. (*Id.*). When the parties could not agree, they were back in court on September 7, 2007. After a hearing, the following order was entered:

> Motion hearing held. . . . Defendant's motion to compel customer information [390] is granted. Defendant shall pay all costs of production as outlined in open court. The documents produced are subject to the protective order previously entered and shall be bates stamped and marked for attorney eyes only.

(Dkt. # 397). Things did not end there.

In October 2007, Autotech produced 10,000 pages of documents to ADC that had been generated by the keyword search. (Declaration of James Trigg, ¶3). The documents were reports, or notes, of Autotech employees' conversations with customers. (*Id.*, Ex. 1). All were headed by a customer name, and within the details of the contact one might find the product name, and the customer's company. Nevertheless, ADC was dissatisfied in that:

> the records produced by Autotech contained no contextual information such as name of the individual at Autotech who spoke with the customer, the date of the customer

3

communication, the source of the referral (such as "advertisement," "warranty claim," "ADC referral," for example) or any other data that may have been entered into the Goldmine record of the conversation.

(*Id.*, ¶ 3).

ADC expressed its displeasure in a letter dated December 12, 2007 and demanded that the documents be produced once again with the additional information. (*Id.*, Ex. 3). Autotech's position is that it printed up the documents ADC's consultant-crafted queries asked for, and which did not include the additional information requested in the July 11, 2007 letter. (*Autotech's Response to ADC's Motion for Sanctions*, at 5). It informed ADC that the additional information would require generating each record manually. (Declaration of James Trigg, ¶7).

Autotech made a final attempt to head off a return to court by producing an index of the customer information documents it produced. (Declaration of James Trigg, Ex. 6). The index included four categories – name of contact person, name of company, address, and reference. The entries were arranged in alphabetical order by the customer contact's first name. The reference column offered a terse description of the purpose of the call, such as "follow up Call" or "Tech Support Call" or the like. It included an individual listed as "oc," which was generally the same name as the one in the "contact' column, but not always. These entries apparently match those under the heading "REF FEILD [sic]" that appears on each report in ADC's prior 10,000-page production. (Declaration of James Trigg, Ex. 6).

This did not satisfy ADC since it did not contain information about the dates of the customer contacts or the Autotech employee who made the contact. It did not contain all the fields that are available on the Goldmine database software. And, last but not least, it required ADC to match the index to the 10,000-page document production manually – just as Autotech had said it would.

4

(Declaration of James Trigg, ¶ 10).

So the parties are back in court, with ADC asking that its consultant be allowed another crack at Autotech's database, either in Bettendorf, or at his offices with a "clone" of the database supplied by Autotech. Both would be done at Autotech's expense. ADC also seeks sanctions against Autotech for failing to comply with the order of September 7, 2007.

Fed.R.Civ.P. 34(b)(2)(E) controls the production of electronically stored information:

> (E) *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> > (I) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
> >
> > (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
> >
> > (iii) A party need not produce the same electronically stored information in more than one form.

The only court order in place was the September 7th order requiring Autotech to produce the documents generated by the search. It did so. Indeed, ADC does not argue to the contrary. Rather, it objects that the production did not include the specific information it desired – and which its own consultant did not specify be obtained from the Goldmine database. Some of the information might be helpful, but the inescapable reality is that Autotech did what ADC's consultant thought sufficient. This is not an instance where Autotech responded to "a discovery request by simply producing electronically stored information in a form of its choice," thereby running the risk that the information as produced would not be usable. *See* Fed.R.Civ.P. 34 (Advisory Committee notes on

2006 amendments); *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 2007 WL 1723509, *4 (S.D.Ohio June 12, 2007). It was ADC's consultant and ADC's search. Perhaps the parties can work out another visit to Bettendorf for ADC's consultant, but what happened here is not sanctionable. *Coleman v. Blockbuster, Inc.*, 2007 WL 4084281, *2 (E.D.Pa. Nov. 15, 2007)(no sanctions where data was produced in required form despite deficiencies in information).

Indices along the line of the one Autotech provided have been found to cure the ills of initial, haphazard productions in some instances, *CP Solutions PTE, Ltd. v. General Elec. Co.*, 2006 WL 1272615, *4 (D.Conn., 2006)(defendants provided plaintiffs with necessary information to match emails to their attachments), but not in others. *PSEG Power N.Y., Inc. v. Alberici Constructors, Inc.*, 2007 WL 2687670, *8 (N.D.N.Y. 2007)(although plaintiff provided spreadsheet to match documents, process remained time-consuming and produced little if any positive results). One imagines that efforts here would be better served by a spreadsheet alphabetized by entries in the "reference" column, which matches the headings on the documents Autotech produced. ADC can request such an index, and ADC must provide it, but it cannot be said from this perspective whether it would result in any significant improvement.

The current dispute has a bumpy history. Initially, Mr. Kumar maintained Autotech produced all the documents it had that were responsive to ADC's request for customer information. It became apparent that the representation was inaccurate. It only begrudgingly produced the documents generated from its Goldmine database and sought to prevent the documents from leaving its offices in Bettendorf. Finally, when it complied with the search fashioned by ADC's expert, there were complaints by ADC that more was needed. Subsequent efforts at remediation have not proved satisfactory. ADC wants the date of the various contacts and certain other information.

Although it now appears that the identifies of those involved in the communications, the identity of the product and the content of the communication have been provided, the dates of the communications have not been. Why ADC's consultant did not fashion a search that would have called for this information is not clear, especially since the parties had been discussing production of the Goldmine data for several months. If the protocol designed by ADC's consultant called for the information, then it should have been produced.

ADC wants its consultant to have another go at the Goldmine database in Bettendorf, Iowa "for purposes of reviewing it and exacting complete records for the Goldmine entries that contained ADC's 'keyword' terms." (*Motion*, at 7, ¶(1)). Autotech objects and says the information being sought can only be obtained through extensive manual effort and that the protocol could not produce the information now sought by ADC. Based on what there is before me, I cannot tell with certainty whether the information now requested was in fact available in the Goldmine database but was not produced as part of the keyword search designed by ADC's consultant.

The question is what to do now. The parties are instructed to meet and attempt to resolve how the dates of the various communications can be obtained. The only area in which further information will be allowed is the dates of those contacts. For now, ADC will bear the costs of obtaining the information. In the event it can be shown that this information was or could have been produced by running the protocol designed by ADC's consultant but was not produced by Autotech, Autotech will bear all of the costs, expenses and attorneys' fees resulting from nonproduction of the information.

7

## CONCLUSION

For the foregoing reasons, the relief sought in ¶1 of ADC's "motion for sanctions" for failure to comply with the Court's September 7, 2007 order [#460] is GRANTED but only to the extent that ADC's consultant may run his original protocol to determine if information relating to dates should have been produced in conformity with that protocol. He may not conduct a free-ranging search of the database to determine whether a different protocol will yield the information that ADC now seeks. The relief sought in ¶¶2-3 is DENIED at this time.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 3/25/08