# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| AUTOTECH TECHNOLOGIES LIMITED PARTNERSHIP, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | |
| AUTOMATIONDIRECT.COM, INC., TIMOTHY HOHMANN and KOYO ELECTRONICS INDUSTRIES CO., LTD. | ) ) ) ) | No. 05 C 5488 |
| Defendants. | ) ) ) | Judge James F. Holderman |
| | ) ) | Magistrate Judge Jeffrey Cole |
| AUTOMATIONDIRECT.COM, INC., | ) ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | |
| AUTOTECH TECHNOLOGIES L.P., AVG ADVANCED TECHNOLOGIES, INC., SHALLI INDUSTRIES, INC., and SHALABH KUMAR, | ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Autotech Technologies has moved to compel ADC to produce all information by or from, to and between ADC and any other third party regarding or relating to its C-More touch panel from 1999 to the present, with the exception of computer source code. ADC objected on the grounds of relevancy, and argues that the motion is simply a rehash of Autotech's motion to compel the production of all information regarding the development of ADC's C-More touch screens, including source code – a motion that was denied on September 18, 2007. While, in its motion, Autotech

claimed it did not want any documents on source code, its reply brief claimed it did.

## I.

In view of the prior ruling of September 2007, and Autotech's assurances in its opening brief that its current motion did not seek source code but rather was focused on other types of information regarding C-More, this opinion will deal only with non-source code documents. The documents sought are:

> 5. All communications and documents from, to and between ADC and EZ Touch and EZ Text customers, potential customers, distributors, Value Added Resellers, systems integrators, regarding or relating to [C-More] touch panels, . . . . from 1999 to present.
>
> 6. All communications and documents from, to and between ADC and Koyo Electronics regarding or relating to AVG or to a business relationship between ADC and AVG, including but not limited to . . . C-More touch panels, from 1999 to present.
>
> 7. All communications and documents from, to and between ADC and Host engineering and between ADC and any third party regarding or relating to AVG or to a business relationship between ADC and AVG, including but not limited to . . . C-More touch panels, from the year 1999 to present.
>
> 10. All records and documents and communications, including but not limited to quotations, purchase orders, invoices and checks or wire transfers, interviews, between ADC and any magazines, newspapers, trade journals, and any other person or entity, related to or regarding . . . C-More product lines for the years 2000 to present.
>
> 11. All documents and communications, including but not limited board meeting minutes, notes, and resolutions, from to or by Koyo Electronics Co., Ltd. Regarding . . . C-More, that are in the possession of ADC or Tim Hohmann.
>
> 17. All technical reports, features documentation, and product specifications supplied or given by ADC to AVG for or related to the development of the EZ Touch and EZ Text panels.

*(Memorandum of Autotech in Support of Its Motion, at 4, Ex. 3; ADC's Response to Autotech's*

*Motion*, at 2). ADC contends that these requests were denied in the September 18, 2007 Order, and Autotech should not be allowed to make an "end run" around that ruling. (*ADC's Response to Autotech's Motion*, at 3).

The September 18, 2007 Order was about discovery of source code information for the C-More product line. Because Autotech had specifically stated that its copyright infringement claim was not about source code, but about screen objects and graphical appearance, source code was not relevant. *Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, 2007 WL 2746654, *2 (N.D.Ill. Sept. 18, 2007). Autotech "reserved the right" to amend its copyright claim "to specifically allege source code infringement," (*id.*, at 4), but Judge Holderman has since denied their motion to do so. (Dkt. #457). So clearly, C-More software is out – Autotech concedes as much in its motion.

ADC's main argument for the denial of Autotech's motion is that the court already ruled on that issue. (*ADC's Response to Autotech's Motion*, at 3-7). The discovery requests at issue here show that they target information that is broader than the C-More software. True, source code might be a subset of the requests, but that does not invalidate those portions of the request that would otherwise be proper. In sum, ADC's argument that the instant motion is a rehash of the motion denied on September 18, 2008, is not entirely accurate.

## II.

Nevertheless, the discovery requests still have to target materials that are "relevant to the claim or defense of any party . . . ." Fed. R. Civ.P. 26(b)(1). While the definition of relevancy under Rule 26(b)(1) is expansive, *Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 439-440 (N.D.Ill. 2006), it is not without boundaries. *E.E.O.C. v. Harvey L. Walner*

3

& *Associates*, 91 F.3d 963, 971 (7th Cir.1996). To keep things in check, the trial court has broad discretion in controlling discovery. *Semien v. Life Ins. Co. of North America*, 436 F.3d 805, 813 (7th Cir. 2006).

The relevancy of the information requested appears to lie in its hoped-for capacity to demonstrate that ADC breached the "best efforts" clause of the parties' agreement, to determine whether ADC misappropriated confidential and proprietary information, and whether there is confusion among customers over EZTouch and C-More, or damages stemming from copyright infringement. [1]

## A.

### The Best Efforts Claim

The parties' agreement contained a best efforts clause:

> 4.1. Effort. ADC shall use its best efforts to distribute the Products in the Territory and to secure a fair and increasing share of the market for the Products in the Territory.

Autotech points out that the clause, relative to discovery regarding the C-More product, was the subject of an exchange in court on June 29, 2006:

> AUTOTECH: Now what our case is all about is during the point in time that they were supposed to be selling EZTouch, they were actually selling their own product.
>
> COURT: Right. And they are not using their best efforts.
>
> AUTOTECH: Now they are saying they are going to redact all references to C-More. If there is a letter in that EZTouch file that says, don't buy EZTouch, our C-More is coming out. I – that's what this case is all about.

---

[1] Autotech's motion does not identify how certain discovery is relevant to a certain claim in their Third Amended Complaint. It simply catalogs the types of documents it would like to see. (*Memorandum in Support of Motion*, at 8-13). Also, despite the fact that the motion is supposedly based on the seven requests discussed above, Autotech does not attempt to link its relevancy arguments to those requests.

COURT: Nothing could be more relevant.

        *      *      *

You're not suggesting that you get to take that out of the case on some predetermined notion of irrelevancy.

ADC: Absolutely not.

(*Memorandum of Autotech in Support of Its Motion*, Ex. 1, at 30-31).

From there, Autotech contends that because ADC was working with Koyo to develop a product to replace EZTouch in the marketplace, despite the "best efforts' clause and ADC's niche as the exclusive marketing agent for EZTouch, nothing could be more relevant than discovery into "what ADC was doing to in regards to C-More . . . ." (*Memorandum*, at 8). Autotech stresses that the motion to compel does not cite a single case on "best efforts" clauses and how they ought to be interpreted. But neither, it may be added parenthetically, does ADC's response (*ADC's Response to Autotech's Motion*, at 8-10) – although the burden is Autotech's, and a party has no obligation to assist its opponent in establishing its claims. *F.E.L. Publications v. Catholic Bishop of Chicago*, 1989 WL 100006 *3 (N.D.Ill. Aug. 22, 1989); *Korman v. Shull*, 184 F.Supp. 928, 936 (W.D.Mich. 1960). The Seventh Circuit has repeatedly held that arguments not supported by pertinent authority are waived. *U.S. ex rel. Fowler v. Caremark RX, L.L.C.*, 496 F.3d 730, 743 (7th Cir 2007). But invocation of the waiver doctrine is ultimately a matter of discretion. And it seems more important to resolve the few final questions this case presents than to invoke the doctrine. This is also consistent with Judge Holderman's rather clear insistence that this case be resolved on the merits.

Clauses requiring "best efforts" are similar to the implied requirement in all contracts that good faith be exercised. *Coleman v. Madison Two Associates*, 307 Ill.App.3d 570, 578, 718 N.E.2d 668, 674 (1st Dist. 1999). The question of whether a party has satisfied its "best efforts" is one of

fact. *Grant v. Board of Educ. of City of Chicago*, 282 Ill.App.3d 1011, 1024, 668 N.E.2d 1188, 1197

(1ˢᵗ Dist. 1996). But any best efforts clause can be satisfied by any of a wide range of possible levels

and types of performance that comport with the exercise of "good faith" by the obligor. *United*

*States v. Board of Education*, 799 F.2d 281, 292 (7ᵗʰ Cir.1986). Significantly for present purposes,

the obligation to use one's best efforts on behalf of another does not require the obligor to ignore its

own interests. *Grant*, 282 Ill.App.3d at 1024-25, 668 N.E.2d at 1197. Phrased differently, best

efforts does not mean exclusive efforts, as the Seventh Circuit made clear about six months after the

June 2006 hearing took place.

In *Autotech Technology Ltd. Partnership v. Automationdirect.com, Inc.*, 471 F.3d 745, 747

(7ᵗʰ Cir. 2006), the court held that under the agreement in this case, "neither party was prohibited

from developing competing products." Moreover, the language of the parties' "best efforts" clause

was limited to *distribution*, and thus documents detailing development of a competing product are

not relevant to the issue of "best efforts" on two counts. *See Klemp v. Hergott Group, Inc.*, 267

Ill.App.3d 574, 580, 641 N.E.2d 957, 962 (1ˢᵗ Dist. 1994)(party obligated to use best efforts only as

to activity specifically set forth in the clause).

Even in the absence of guidance from the Seventh Circuit and the Illinois Appellate Court,

it is easy to see that if one department of a company were focused on development of a new product,

that would not impinge on the efforts of the company's sales and distribution force with respect to

another product. After all, the question of whether a party has satisfied its "best efforts" obligation

is dependent upon the nature of the undertaking for which the "best efforts" commitment has been

made. *Grant*, 282 Ill.App.3d at 1025, 668 N.E.2d at 1197-1198; *United States v. Board of*

*Education*, 799 F.2d at 292. But efforts toward sales and distribution of the newly developed

product might. While ADC could act in its own interests, there may come a point where those

efforts might justify the fact-finder in concluding that there was a breach of the "best efforts" clause.

*Grant*, 282 Ill.App.3d at 1025, 668 N.E.2d at 1197(*citing Van Valkenburgh, Nooger & Neville, Inc.*

*v. Hayden Publishing Company*, 30 N.Y.2d 34, 330 N.Y.S.2d 329, 281 N.E.2d 142 (1972)). Such

documents might also provide a measuring stick to judge just what ADC's "best efforts" are: the

effort they employ to promote and distribute their own product as compared to the effort they employ

with regard to another's product. True, as ADC argues, the two products were sold in different time

periods, but that does not mean any comparison of efforts is necessarily invalid. Other sales-related

documents arguably relevant would be those demonstrating ADC's use of customer feedback.

Perhaps customers had specific problems with a feature of EZTouch and, rather than address the

issue, retained the knowledge for its own use rather than employ it "to secure a fair and increasing

share of the market" for EZTouch.[2]

All of this type of C-More-related information – none of it technical – is arguably relevant

to Autotech's "best efforts" claim. According to ADC, it has already produced all "non-technical"

documents. (*ADC's Response*, at 8). Autotech denies it. So ADC will either produce the types of

relevant materials discussed here if it has not already done so, or certify that it has. Fed.R.Civ.P.

26(g)(3). Any consequences will be meted out under Fed.R.Civ.P. 37(b) at trial. One would assume

that ADC could easily demonstrate with reference to correspondence and Bates numbers what it has

produced and it must do so in writing in ten days.

---

[2] Such documents could be distinguished from product development documents because such documents would acknowledge the problem and indicate it as one that could be targeted in product development, as opposed to documents that actually addressed the problem. It would be the difference between "here's something we should do," and "here's how we do it."

**B.**

**Relevance as to Confidential and Proprietary Technical Information**

Autotech's argument that documents showing the file structure of C-More are relevant goes

this way:

> It is understood that this Court, primarily based on the Autotech parties' answers to
> interrogatories, has denied the production of C-More software source code. However
> Autotech has alleged numerous other areas of intellectual property belonging to
> Autotech and misappropriated by ADC and discovery is totally appropriate regarding
> those areas.

(*Memorandum of Autotech in Support of Its Motion*, at 9). Autotech's brief does not identify what

"those areas" might be to allow any analysis of relevance. It does not cite to the "numerous other

areas of intellectual property" it alleges in its forty-page complaint. Autotech also asserts that ADC

has "admitted to hacking into" the EZTouch system, but fails to provide any citation to the record.

(*Memorandum*, at 9).[3]

Whatever persuasiveness *Computer Associates Intern., Inc. v. Altai, Inc.*, 1992 WL 139364

(2nd Cir. June 22, 1992) might have had to support Autotech's contention that file structure is a

protectable trade secret, (*Memorandum*, at 9), vanishes in view of the Second Circuit's withdrawal

of the opinion, which was superseded by *Computer Associates Intern., Inc. v. Altai, Inc.*, 982 F.2d

693 (2nd Cir. 1992).

Even if it were still viable, the opinion dealt specifically with a claim for copying a computer

---

[3] It is not for a court to comb through the record or to make an argument that the briefs do not make or to find record support for one that is. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)("Judges are not like pigs, hunting for truffles buried in briefs" or in the record); *Economy Folding Box Corp. v. Anchor Frozen Foods Corp*, 515 F.3d 718 (7th Cir. 2008); United States v. McLee, 436 F.3d 751, 760 (7th Cir. 2006). Indeed, to require that they do so is at odds with the fundamental premise of our adversarial system. *See United States v. Lanzotti*, 199 F.3d 954, 960 (7th Cir. 1999).

program, a claim which Autotech has admittedly disavowed:

> As a caveat, we note that our decision here does not control infringement actions regarding categorically distinct works, such as certain types of screen displays. These items represent products of computer programs, rather than the programs themselves, . . . Of course, the copyright protection that these displays enjoy extends only so far as their expression is protectable. In this case, however, we are concerned not with a program's display, but the program itself, and then with only its non-literal components.

1992 WL 139364, *9 (citations omitted). One additional point: Autotech's focus on the misappropriation of its trade secrets is confusing as its third amended complaint includes no claim for the misappropriation of trade secrets and, in fact, the term "trade secret" seemingly appears nowhere in the document. Thus, Autotech's contention that documents on file structure are relevant must be rejected.

## C.

### Relevance of C-More Documents to Question of Customer Confusion

Autotech points out that customer confusion is an issue in this case, stemming from both its trademark infringement claim and ADC's deceptive advertising claims. As such, it argues that "any document that refers to C-More is relevant to determine whether customers are confused as to marketing differences between C-More and Autotech." (*Memorandum of Autotech in Support of Its Motion*, at 11). This argument is unconvincing. Obviously, not every document mentioning C-More could bear on the issue of customer confusion? Only documents bearing on customer reactions, feedback, and the like are relevant to that question.

ADC, on the other hand, argues that it has already produced documents concerning communications with customers that reference EZTouch or EZText products. It contends that communications mentioning only the C-More product are not relevant. But certainly some of those

9

types of communications could still bear on customer confusion even though only referencing the C-More product. ADC must produce those documents that mention C-More and evidence in some way customer confusion or uncertainty. The test is not and cannot be whether the document only makes explicit reference to the C-More product.

## D.

## Relevance Of C-More Sales Records To Copyright Infringement Damages

Autotech argues that information "regarding C-More sales or customers" is relevant because "any sales of C-More using the copyrighted screen objects of the EZTouch program are infringing and constitute damages to Autotech." To support its contention, Autotech relies exclusively on *Rhodes v. Sigler*, 44 Ill.App.3d 375, 357 N.E.2d 846 (3rd Dist. 1976). In that case, a landlord was found to have taken wrongful possession of farmland under a lease. The state court awarded the plaintiff-tenant lost profits based on what the land produced while the landlord was wrongfully in possession. It is not a copyright case, and it is inapt. It is difficult to discern the analogy between a single piece of farmland and two competing computer touch screen products. In any event, as Judge Posner is fond of say, reasoning by analogy is inherently dangerous. *Dupuy v. Samuels*, 397 F.3d 807 (7th Cir. 2007); *Resolution Trust Corp. v. Ruggiero*, 994 F.2d 1221, 1225 (7the Cir. 1993).

Moreover, Autotech's selection of supportive authority is odd since it is suing under the Copyright Act and there are cases aplenty dealing with lost profits in copyright cases. *See e.g., Bucklew v. Hawkins, Ash, Baptie & Co., LLP.*, 329 F.3d 923 (7th Cir. 2003); *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557 (7th Cir. 2003). Obviously, sales of an infringing product are relevant to a claim for lost profits. *Bucklew*, 329 F.3d at 931; *McRoberts Software*, 329 F.3d at 568. But customer information is not, and Autotech's brief makes no attempt to explain how it might be

10

and the farm leasing case is not helpful. ADC agrees that if sales information is relevant – and it makes no strenuous argument that it is not (*Response*, at 9-10) – it will produce the same type of sales records that Autotech has produced. It must do so within ten days.

## III.

### Autotech's Reply Brief

Reply briefs are for replying, not for raising new arguments or arguments that could have been advanced in the opening brief. *See United States v. Boyle*, 484 F.3d 943, 946 (7th Cir. 2007)(arguments are forfeited); *United States v. Alhalabi*, 443 F.3d 605, 611 (7th Cir. 2006); *Carter v. Tennant Co.*, 383 F.3d 673, 679 (7th Cir. 2004); *Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 437 (N.D.Ill. 2006). Autotech's reply brief runs afoul of the purpose of a reply brief and will not be considered.

Autotech's initial motion asked for "all information . . . regarding or relating to its C-More touch panel from the year 1999 to the present, *with the exception of production of computer source code.*" Its reply asks for "information, documents and materials . . . including but not limited to... The C-More software object code, source code, file structure, product specifications, technical reports and documentation." (*Autotech's Revised Reply in Support of Motion*, at 14). The justification for this shift in position is not supportable. It is important to recall that the limitation of the copyright claim was Autotech's own doing. When asked in interrogatories about the scope of its claim and whether it involved source code infringement, Autotech clearly stated it did not. (*Autotech's Revised Reply in Support of Motion*, Ex.A). And it was on this basis that it resisted discovery by ADC.

Now, Autotech argues – for the first time in its reply brief – that it "reserved the right to

supplement or amend those [interrogatory] answers and the complaint." (*Autotech's Revised Reply in Support of Motion*, at 5). It repeats the same assertion in its brief on "The Issue of the Autotech Amended Discovery Responses." (*Brief*, at4). What Autotech in fact said was that it reserved the right to *allege* copyright infringement based upon source code infringement "and to *amend* the pleadings to so allege . . . . *If and when the Autotech Parties amend* their pleadings to specifically allege source code infringement, the Autotech Parties will seasonably supplement its [sic] answers to these interrogatories." (*Autotech's Revised Reply in Support of Motion*, Ex.A)(Emphasis supplied). But Judge Holderman denied Autotech's motion to file a *fourth* amended complaint in this case. The pleadings have not been – and will not be – amended.

Autotech amended its interrogatory responses anyway to reflect its new vision of its copyright claim, one that embraced the previously disavowed source code. The amendment came on January 28, 2008 – the same day as Autotech's reply brief, and just a month before discovery closed. Through this, Autotech attempted to expand the scope of its copyright claim to include source code despite its assurances to the contrary – assurances ADC and the court had relied upon for over a year. The current attempt is unfair, *see Autotech Technologies Ltd. Partnership v. Automationdirect.com, Inc.*, 2007 WL 2746654, *2 -3 (N.D.Ill. Sept. 18, 2007); *Kim v. Sara Lee Bakery Group, Inc.*, 412 F.Supp.2d 929, 940 n.8 (N.D.Ill. 2006), especially given the fact that the scope of Autotech's claim was to be defined by discovery. *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006).

As Judge Holderman has denied Autotech's attempt to expand its claim through a fourth amended complaint; that is the end of the matter.

## CONCLUSION

For the foregoing reasons, Autotech's Motion to Compel [#419] is GRANTED in part and DENIED in part. ADC is to produce those materials required by this order – if there are any such documents – within ten days and to certify that it has complied with discovery in total when it has done so. The motion for sanctions is denied. *See In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 320, 330 (N.D.Ill. 2005).

ENTERED:_____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 3/25/08