IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AUTOTECH TECHNOLOGIES LIMITED PARTNERSHIP,<br><br>Plaintiff,<br><br>vs.<br><br>AUTOMATIONDIRECT.COM, INC., TIMOTHY HOHMANN and KOYO ELECTRONICS INDUSTRIES CO., LTD.<br><br>Defendants. | No. 05 C 5488<br><br>Judge James F. Holderman<br><br>Magistrate Judge Jeffrey Cole |
| AUTOMATIONDIRECT.COM, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>AUTOTECH TECHNOLOGIES L.P., AVG ADVANCED TECHNOLOGIES, INC., SHALLI INDUSTRIES, INC., and SHALABH KUMAR,<br><br>Defendants. | |

## MEMORANDUM OPINION AND ORDER

ADC seeks to compel Autoech to produce an electronic copy of a document titled EZTouch File Structure. Autotech has already produced the document in both .PDF format on a compact disc and paper format. Not good enough says ADC, because the document was created with a word processing program and exists in its "native format" – the way it is stored and used in the normal course of business – on a computer at Autotech's offices in Bettendorf, Iowa. ADC wants it in this

format because it wants the "metadata" – information ADC claims is within the electronic version of the document including when the document was created, when it was modified, and when it was designated "confidential."[1]

ADC explains that this dispute harkens back to the motions to compel responses to interrogatories and document requests it filed in March of 2007. (*ADC's Motion to Compel File Structure Document*, at 2-3), which demanded "[e]ach and every document identified in your responses to accompanying interrogatories and/or used or referred to in responding to said interrogatories." (*ADC's Memorandum in Support of Its Motion to Compel Responsive Answers* (Dkt. # 294), at 10; Ex. 2). The motion was granted in part – as to interrogatory answers – on September 12, 2007, and the parties were directed to confer in good faith over the discovery dispute.

Autotech employees, Dick Glover and Michael Horn, submitted their sworn declarations as to their efforts to provide ADC with the file at issue. (*Autotech's Response to ADC's Motion to Compel*, Ex. 2). They saved two electronic files – specifically, two Microsoft Word documents – to a compact disc. (*Id.*, Decl. of Richard Glover, ¶ 2; Decl. of Michael Horn, ¶ 2). The files came directly from Autotech's engineering server, where they are kept in the ordinary course of business.

---

[1] Metadata, commonly described as "data about data," is defined as "a set of data that describes and gives information about other data" or "information about a particular data set which describes how, when and by whom it was collected, created, accessed, or modified and how it is formatted (including data demographics such as size, location, storage requirements and media information)." It includes all of the contextual, processing, and use information needed to identify and certify the scope, authenticity, and integrity of active or archival electronic information or records. Some examples of metadata for electronic documents include: a file's name, a file's location (*e.g.*, directory structure or pathname), file format or file type, file size, file dates (*e.g.*, creation date, date of last data modification, date of last data access, and date of last metadata modification), and file permissions (*e.g.*, who can read the data, who can write to it, who can run it). Some metadata, such as file dates and sizes, can easily be seen by users; other metadata can be hidden or embedded and unavailable to computer users who are not technically adept. *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, 2007 WL 1723509, *3 n.2 (S.D.Ohio June 12, 2007)(citations omitted).

2

No change was made to the documents, their contents or their metadata during the process of "burning" the electronic files to compact disc. (Decl. of Richard Glover, ¶ 3; Decl. of Michael Horn, ¶¶ 3-4).

One of the two Microsoft Word documents contained the text of Autotech's "PGI" file structure. PGI is the operator interface program Autotech employed to create the EZTouch panel. Autotech calls it the predecessor or forerunner of the EZTouch file structure. The creation and history of these computer files dates back to approximately 1991. As Autotech's employees did not use Word in the early 1990s, the PGI file structure was most likely written in some type of a word processing program other than Microsoft Word and was converted to a Word format sometime in the mid 1990s. (Decl. of Richard Glover, ¶ 4).

The second Microsoft Word documents contained the text of Autotech's current file structure for the EZTouch panel. It is the only EZTouch file structure document Autotech maintains. Autotech does not, and historically has not, independently preserved older files at the time of revision. That is to say, as the EZTouch file structure has been changed and updated, each newer version of the file structure document has been added over the top of the previous version. Nevertheless, one can follow a chronological history of changes to the file structure by viewing the face of the document itself. Pages 7-15 provide the "Document Modification History." It is a chronological list of all changes that have been made since the EZTouch file structure was created from the PGI design document on February 9, 2000. Prior history and contents of this document are contained in the PGI file structure document described above. (Decl. of Michael Horn, ¶ 5).

As the instant motion makes clear, ADC is not satisfied with the efforts of Mssrs. Glover and Horn. It complains that the file was not produced in its native format – a Microsoft Word document

on an engineering computer at Autotech's offices – but in .PDF, or portable document format, and a hard copy. The problem with that, According to ADC, is that these format do not contain metadata which would show the electronic history of the document, especially when the document was first created, and when the document was designated "confidential."

Fed.R.Civ.P. 34(b)(2)(E) controls the production of electronically stored information:

(E) *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:

> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> (iii) A party need not produce the same electronically stored information in more than one form.

Here, ADC did not specify a form for the production of the document at issue, so Autotech had the option of producing it in the form in which it was ordinarily maintained, or in a reasonably usable form.[2]

ADC argues that the document at issue was converted from Microsoft Word to .PDF; *i.e.* that it was not produced in the form in which it was ordinarily maintained. But that is all it is – an

---

[2] The case upon which ADC relies, *Hagenbuch v. 3B6 Sistemi Elettronici Industriali S.R.L.*, 2006 WL 665005, *1 (N.D.Ill. Mar. 8, 2006), does not suggest otherwise. There, the plaintiff specifically requested "identical, electronic copies of the electronic media" at issue, making it clear that paper copies would not suffice. It designated certain compact discs and DVDs to be copied and produced in that format. But the defendant produced them in a different format. It converted the documents to a different form and only then downloaded them onto compact discs. The court found that the plaintiff was entitled to what it had requested. 2006 WL 665005, *2.

4

argument – and ADC does not provide evidence, such as an affidavit to support its version of the production. An uncorroborated statement in a brief doesn't count. *See IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.*, 437 F.3d 606, 610-611 (7th Cir.2006); *Clarus Transphase Scientific, Inc. v. Q-Ray, Inc.*, 2006 WL 4013750, *12 (N.D.Ill. Oct. 6, 2006). As of March 12, 2008, about two weeks after filing this motion to compel, counsel for ADC had only performed a "cursory review" – his term – of the documents on the compact disc. (*Autotech's Response to ADC's Motion to Compel*, Ex. 1). At that time, he indicated in an email to Autotech's counsel that he was "having further analysis done on the materials," but that he did "not believe that the **original** Word files have been provided . . . ." (*Id.*).

Autotech has for its support the sworn declarations of Mssrs. Glover and Horn who state that the Microsoft Word file was saved onto a compact disc, and that no changes were made to the files in the process of moving them to the disc. Yet, in its response brief, Autotech says that it "provided both paper and '.pdf' versions of Autotech's EZTouch file structure document, implying that the file was converted to .pdf to move it to the disc. (*Autotech's Response to ADC's Motion to Compel*, at 1). Perhaps this was an error, as on the following page, Autotech says the files were saved to disc in their native format, Microsoft Word. (*Id.*, at 2).

If the document on the disc is a Microsoft Word file, and Mssrs. Glover and Horn are taken at their word that no changes were made to it, this dispute is at an end. Autotech's production of the file complies with Fed.R.Civ.P. 34(b)(2)(E)(ii). If not, then the question is whether either the .pdf file and the hard copy are reasonably usable forms. ADC argues that it is not usable because it does not contain things that metadata would contain, like the history of the document. But the paper copy includes a nine-page history of the changes made to the document from its creation on February 9,

5

2000, to March 2, 2007. (*Autotech's Motion to Compel File Structure Document*, Ex. 1). So the real problem for ADC is that the hard copy does not include the metadata that would be associated with the document as it is stored on Autotech's engineering computer. According to ADC, that is why the two versions Autotech produced are not "reasonably usable."

ADC clearly did not specify that it wanted metadata as a part of Autotech's document production. *See D'Onofrio v. SFX Sports Group, Inc.*, 247 F.R.D. 43, 48 (D.D.C. 2008)(party failed to specifically mention metadata); *Haka v. Lincoln County*, 246 F.R.D. 577, 578 (W.D.Wis. 2007)(noting party specifically requested all "documents, notes, memos, e-mails and metadata"). There was not mention of it in the earlier motions to compel. The court order certainly did not require it to be produced. From ADC's brief, it would appear that the first thought ADC gave to metadata came shortly after Autotech produced a paper version of the file structure document. (*ADC's Motion to Compel File Structure Document*, at 3).

It seems a little late to ask for metadata after documents responsive to a request have been produced in both paper and electronic format. Ordinarily, courts will not compel the production of metadata when a party did not make that a part of its request. *See D'Onofrio*, 247 F.R.D. at 48 (D.D.C. 2008); *Wyeth v. Impax Labs., Inc.*, No. Civ. A. 06-222-JJF, 2006 WL 3091331, at *1-2 (D.Del. Oct.26, 2006) ("Since the parties have never agreed that electronic documents would be produced in any particular format, [Plaintiff] complied with its discovery obligation by producing image files"). *Cf. Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y.2006) (requiring production in native format where requesting party asked for it and producing party did not object). *See also* Ralph C. Losey, E-Discovery, Current Trends and Cases 158-59 (2007) (summarizing recent cases as amounting to a "lesson ... that in order to obtain metadata you may need, you should

specifically ask for it to begin with").

Some courts faced with issue regarding the production of metadata have looked for guidance to the *The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Discovery* (The Sedona Conference Working Group Series, July 2005 Version), available generally at http://www.thesedon aconference.org. [3] One comment from the conference is of particular interest here, addressing a hypothetical situation where, like ADC here, a party requesting production did not specify a format:

> The producing party assembles copies of the relevant hard copy memoranda, prints out copies of relevant e-mails and electronic memoranda, and produces them in a PDF or TIF format that does not include metadata. Absent a special request for metadata (or any reasonable basis to conclude the metadata was relevant to the claims and defenses in the litigation), and a prior order of the court based on a showing of need, this production of documents complies with the ordinary meaning of Rule 34.

*Williams v. Sprint/United Management Co.*, 230 F.R.D. 640, 643 (D.Kan. 2005)(*quoting The Sedona Principles*, Comment 9a); *Pace v. International Mill Service, Inc.*, 2007 WL 1385385, *2 (N.D.Ind. May 7, 2007)(same). In a later comment, the conference states that "[a]lthough there are exceptions to every rule, especially in an evolving area of the law, there should be a modest legal presumption in most cases that the producing party need not take special efforts to preserve or produce metadata." *Williams*, 230 F.R.D. at 651 (*quoting The Sedona Principles*, Comment 12a). There was no request for metadata here until recently – after production. ADC was the master of its production requests; it must be satisfied with what it asked for.

---

[3] The Sedona Conference is a nonprofit legal policy research and educational organization which sponsors Working Groups on cutting-edge issues of law. The Working Group on Electronic Document Production is comprised of judges, attorneys, and technologists experienced in electronic discovery and document management matters. *Pace v. International Mill Service, Inc.*, 2007 WL 1385385, *2 (N.D.Ind. May 7, 2007); *Williams v. Sprint/United Management Co.*, 230 F.R.D. 640, 643 (D.Kan. 2005)

7

One final point. On April 2nd, a day after it was due, ADC filed its reply brief, asking that its initial motion be denied as moot. The reply asks that this opinion reflect that Autotech represents that the version it has produced is the only version in its possession. As this order resolves the dispute without the necessity of delving into this additional issue, ADC's invitation is rejected.

## CONCLUSION

For the foregoing reasons, ADC's motion to compel file structure document in its native electronic format [# 466] is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

DATE: 4/2/08